(165 P.3d 1050)
No. 96,613

STATE OF KANSAS, *Appellee*, v. NICHOLAS L. MARTINEZ, *Appellant*.

Opinion filed August 17, 2007.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Douglas A. Matthews*, county attorney, *Scott E. McPherson*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., McANANY, J., and BRAZIL, S.J.

McANANY, J.: Nicholas L. Martinez appeals the district court's imposition of an upward dispositional departure sentence following his guilty plea to possession of cocaine and endangering a child. He raises two main issues: (1) whether the fact that he is an illegal alien justifies the denial of presumptive probation and (2) whether the district judge gave him fair notice of her intention to impose a departure sentence. We conclude that under the present statutory scheme for probationers, the fact that Martinez is an illegal alien may, under certain limited circumstances, constitute a substantial and compelling reason for the district court to depart. Nevertheless, the district judge failed to determine whether those limited circumstances existed and also failed to provide adequate warning of her intent to depart. Therefore, we must vacate Martinez' sentence and remand the case for resentencing.

Martinez also raises an issue with regard to the assessment of the Board of Indigents' Defense Services (BIDS) attorney fees. We conclude that we must set aside the order for attorney fees and remand for reconsideration of the assessment consistent with *State*

*v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006), and K.S.A. 2006 Supp. 22-4513.

The facts are not in dispute. Detective Terry L. Millard arranged for a controlled buy of illegal drugs from Martinez. The first transaction was concluded with the transfer of powered cocaine from Martinez' young son. The second transaction was consummated by Martinez delivering the drugs. Martinez was arrested and, pursuant to a search warrant, his house was searched. Police found additional cocaine, along with two stolen social security cards. They also found a United States Immigration and Naturalization Service Resident Alien card issued to one of the victims of the social security card thefts. The resident alien card bore the photograph of Martinez' wife.

Martinez was charged with the sale of cocaine, possession of cocaine with intent to distribute, endangering a child, theft, and unlawful possession of an identification card. Pursuant to a plea agreement, Martinez entered a guilty plea to an amended charge of possession of cocaine and endangering a child. In return, the State dismissed the remaining charges and recommended that the court impose the presumptive sentence of probation. It was apparent from the comments of his counsel at the plea hearing that Martinez was an illegal alien. In commenting about Martinez' eligibility for drug treatment, his counsel stated:

"I believe Mr. Martinez, because of his citizenship and status, may or may not be eligible under Senate Bill 123 for the mandatory treatment. He may or may not be here. I think — and I have explained to Mr. Martinez that he risks the fate of his brother that I represented on similar charges who was deported, and Mr. Martinez — if the INS continues, both Mr. McPherson and I expect that that's what's going to happen. We certainly have not guaranteed Mr. Martinez that's not going to happen."

The court accepted Martinez' plea and set the matter for sentencing.

At the sentencing hearing, before imposing a sentence, the district judge stated:

"THE COURT: Okay. Well, the first question that arises here is that whether— Mr. Martinez is not legally in this country if I remember right—correctly; is that right?

"THE INTERPRETER: That's correct, Your Honor.

"THE COURT: Okay, . . . the problem that arises for me is to follow the guidelines here is because Mr. Martinez is illegally in the country and is in violation of the probation rules right from the start if I were to place him on probation. . . . [H]e . . . has to comply with all the conditions of the probation and he can't do that because he's in violation of the law not to violate any federal or state laws. And so for that reason, I am going to have a big problem following these guidelines, but is there any legal reason why I should not impose sentence at this time?'"

When neither party responded in the affirmative, the court imposed an upward dispositional departure sentence by denying presumptive probation and sentencing Martinez to 11 months' imprisonment on the cocaine conviction and a concurrent sentence of 1 year in the county jail on the endangering a child conviction. The court also ordered Martinez to reimburse BIDS for his attorney fees.

Martinez appeals.

*The Departure Sentence*

Martinez argues that his status as an illegal alien was not a substantial and compelling reason to deny him presumptive probation. He claims that the court's reliance on his status as an illegal alien resulted in him being sentenced for immigration violations, an unintended use of the guidelines as well as a violation of his due process and equal protection rights.

It is important to recognize from the outset what this case is not about. Under the sentencing guidelines enacted by our legislature, Martinez enjoyed the presumption that he should be granted probation. This is not a situation in which the district court determined that Martinez was incapable of fulfilling specific terms of his presumptive probation. The district court concluded, as a matter of law, that his mere presence as an illegal alien rendered him incapable of complying with the law. Had Martinez been placed on probation with the essential requirements that he comply with all applicable laws, the district court could expect this to include the duty to register with the immigration authorities as required by 8 U.S.C. 444 1302(a) (2000), to report his ongoing whereabouts as required by 8 U.S.C. § 1305(a) (2000), and to otherwise conform

his conduct to our civil and criminal laws. Thereafter, the district court could find him to be in violation of his probation if he failed to do so. However, the district court concluded, and the State argues on appeal, that Martinez' immigration status alone made him ineligible for probation without further examination of his willingness or ability to conform his conduct to the law or to fulfill the terms of his proposed plan of probation.

We review a departure sentence to determine whether the sentencing court's findings of fact and reasons justifying a departure (1) are supported by substantial evidence in the record and (2) constitute substantial and compelling reasons for departure. *State v. Neri*, 32 Kan. App. 2d 1131, 1132, 95 P.3d 121, *rev. denied* 278 Kan. 850 (2004). Whether a factor constitutes a substantial and compelling reason for departure is a question of law over which appellate review is unlimited. *State v. Martin*, 279 Kan. 623, 625-26, 112 P.3d 192 (2005). To be substantial the reason must be real, not imagined, and of substance, not ephemeral. To be compelling the reason must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose. See *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

K.S.A. 2006 Supp. 21-4716(c) contains a nonexclusive list of substantial and compelling departure factors. Extra-statutory departure factors are subject to stricter scrutiny than those enumerated in the statute. *State v. Murphy*, 270 Kan. 804, 807, 19 P.3d 80 (2001). The sentencing court must state on the record the substantial and compelling reasons for the departure, and the court's comments govern as to the reasons for departure. K.S.A. 2006 Supp. 21-4716(a); *Murphy*, 270 Kan. at 806.

There is no question that Martinez' status as an illegal alien was the fact which prompted the court to depart and to not grant him probation. The argument Martinez raises has been considered by the appellate court in Oregon in *State v. Zavala-Ramos*, 116 Or. App. 220, 223, 840 P.2d 1314 (1992), and in *State v. Morales-Aguilar*, 121 Or. App. 456, 458-59, 855 P.2d 646 (1993), but not in Kansas.

In *Zavala-Ramos*, the court concluded that immigration status is not per se relevant, but the sentencing court may consider a pattern of the defendant's conduct which demonstrates the defendant's unwillingness to conform his conduct to legal requirements. 116 Or. App. at 223.

Applying *Zavala-Ramos*, the court in *Morales-Aguilar* found that the sentencing court did not depart because the defendant was an illegal alien, but because of the defendant's absolute disregard of law and his pending deportation. 121 Or. App. at 458-59.

In determining whether Martinez' departure sentence was justified, we must decide whether there is an incongruity between Martinez serving his probation in Kansas and his ongoing presence in this country as an illegal alien. The district court believed that there was.

It is apparent from an examination of K.S.A. 2006 Supp. 21-4716 and the Kansas cases that they do not directly address this issue. K.S.A. 2006 Supp. 21-4716(c)(2) provides a *nonexclusive* list of aggravating factors that may be considered in determining whether there are substantial and compelling reasons to depart. This list includes the vulnerability of the victim, the brutality of the act, the motivation of the defendant, the relationship between defendant and victim, whether the defendant is a sexual predator, and whether the defendant was incarcerated at the time the crime was committed.

Although nonamenability to probation is not explicitly listed as a substantial and compelling reason to depart, our courts have repeatedly recognized that it is. See *State v. Grady*, 258 Kan. 72, 89, 900 P.2d 227 (1995), and the various other decisions cited therein. We then must ask: Does the fact that a defendant is an illegal alien automatically render that defendant unamenable to probation?

8 U.S.C. § 1325(a) (2000) declares an alien's unsanctioned entry into the United States to be a crime. The statute provides:

"Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense,

be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both."

While in this country one whose presence is unlawful remains subject to the full range of obligations imposed by our laws. However, while Congress has criminalized the illegal entry into this country, it has not made the continued presence of an illegal alien in the United States a crime *unless* the illegal alien has previously been deported and has again entered this country illegally. 8 U.S.C. § 1326 (2000) makes it a felony for an alien who has been deported to thereafter reenter the United States or at anytime thereafter be found in the United States.

Those persons who enter this country illegally are subject to deportation. 8 U.S.C. § 1227 (2000). Martinez' counsel acknowledged this possibility at the plea hearing. Deportation may be based upon any number of factors, including the alien's initial entry into this country contrary to law or acts while in this country, such as the commission of certain crimes. However, while an illegal alien is subject to deportation, that person's ongoing presence in the United States in and of itself is not a crime unless that person had been previously deported and regained illegal entry into this country. See *United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193-94 (9th Cir. 1979). As noted by the United States Supreme Court in *United States v. Cores*, 356 U.S. 405, 408 n.6, 2 L. Ed. 2d 873, 78 S. Ct. 875 (1958), when it commented on 8 U.S.C. § 1325 and similar statutes: "Those offenses are not continuing ones, as 'entry' is limited to a particular locality and hardly suggests continuity."

The district court viewed Martinez' continued presence in the United States during a term of probation to be incompatible with his status as an illegal alien. The court observed: "Mr. Martinez is illegally in the country and is in violation of the probation rules right from the start if I were to place him on probation." This is true if Martinez had previously been deported and thereafter reentered the country illegally. 8 U.S.C. § 1326 would make his mere ongoing presence here a felony. On the other hand, if Martinez entered the country in violation of 8 U.S.C. § 1325 but has not previously been deported, his ongoing presence is not a crime

though he is subject to deportation. Since the district court made no finding that 8 U.S.C. § 1326 applies to Martinez, we must set aside the departure sentence and remand for resentencing. If Martinez has not previously been deported, then the mere fact of his illegal alien status does not in itself render him unamenable to probation.

On the other hand, had Martinez previously been deported and reentered the country illegally, the district court's observations would be correct: Each day he served on probation would be a day on which he violated 8 U.S.C. § 1326. The presentence investigation report for Martinez recommended that if he were placed on probation, he should serve his probation under the supervision of a court services officer. By law his probation would have been conditioned upon him not violating the laws of the United States, the State of Kansas, or any other jurisdiction to which he may be subject. See K.S.A. 2006 Supp. 21-4610(a). Further, a defendant on probation typically is required to meet with the assigned court services officer on some periodic basis. Such an arrangement would have required Martinez' continued presence in the area throughout the term of his probation. Interestingly, one of the recommended probation conditions was a travel restriction, *i.e.*, Martinez would have been required to remain within a 100-mile radius of his residence in Kansas unless he had the permission of his court services officer. Further, he would have been prohibited from leaving Kansas without the written permission of his court services officer. Thus, it is readily apparent that fulfillment of the statutorily mandated and additional recommended probation terms would have been inconsistent with Martinez continuing to reside in this country as an illegal alien throughout the term of his probation if he had previously been deported and had since reentered this country illegally.

Court service officers are appointed by the chief judge of the judicial district as necessary to perform certain judicial and administrative functions of the district court. K.S.A. 2006 Supp. 20-345. They are officers of the court. They perform a multitude of important tasks for the court, including the supervision of defendants placed on probation. See K.S.A. 20-346a(b). They have the au-

thority to arrest a probationer for violating the terms of probation and to initiate proceedings which ultimately can lead to the revocation of probation. See K.S.A. 2006 Supp. 22-3716(a). A grant of probation to one whose ongoing presence in this country violates 8 U.S.C. § 1326 would require the supervising court services officer to "look the other way" and ignore the defendant's ongoing daily violations of law.

As stated in *Mapp v. Ohio*, 367 U.S. 643, 659, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, *reh. denied* 368 U.S. 871 (1961):

"Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in *Olmstead v. United States*, 277 U.S. 438, 485[, 72 L. Ed. 944, 48 S. Ct. 564] (1928): 'Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law into himself; it invites anarchy.' "

We conclude that there can be no more substantial and compelling reason for a court's actions than the preservation of the rule of law. Thus, if a defendant's continued presence in the United States is in violation of 8 U.S.C. § 1326 (previously deported), that fact alone may constitute a substantial and compelling reason to deny presumptive probation.

Martinez argues that state courts are not the proper forum to adjudicate his immigration status. It is true that the courts of this state enjoy no status with respect to the classification of aliens. See *Hines v. Davidowitz*, 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399 (1941). This power resides in the executive and legislative branches of the federal government. *Mathews v. Diaz*, 426 U.S. 67, 81, 48 L. Ed. 2d 478, 96 S. Ct. 1883 (1976). However, there was no adjudication of Martinez' immigration status by the sentencing court. Martinez' counsel, *sua sponte*, referred to Martinez' status at the plea hearing. At the sentencing hearing the district court asked, "Mr. Martinez is not legally in this country if I remember right — correctly; is that right?" Martinez, through the interpreter, responded, "That's correct, Your Honor." The district court did not engage in an adjudication of Martinez' immigration status. It simply recognized a fact about Martinez which his counsel volunteered

during the course of the proceedings. On remand the district court is permitted to consider whether Martinez has been deported in the past in determining his amenability to probation.

Martinez correctly points out that it is not the function of the state courts to enforce our national immigration laws. The district court was not enforcing our national immigration laws by simply recognizing Martinez' immigration status for the purpose of deciding whether he is amenable to probation. The fact that our national leaders, for political, policy, or budgetary reasons, have chosen to ignore violations of our immigration laws does not prevent our courts from considering whether a defendant is engaging in an ongoing violation of law in determining that defendant's amenability to probation. The sentencing court should not be compelled to impose a plan of probation which, by its very nature, cannot be successfully completed.

Martinez also argues that the sentencing court's departure sentence denied his constitutional rights to due process and the equal protection of the laws. Martinez does not explain how the sentencing court denied his right to due process. An issue asserted in passing without supporting argument or authority is deemed waived. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004).

With respect to Martinez' equal protection claim, there is no doubt that the Fourteenth Amendment to the United States Constitution extends its protections to all persons within the boundaries of this state. Its protections are not limited to citizens of this country. Nevertheless, the Equal Protection Clause does not prohibit all classifications, only invidious classifications. As noted by the Court in *Plyler v. Doe*, 457 U.S. 202, 216, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982), the case relied upon by Martinez:

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415[, 64 L. Ed. 989, 40 S. Ct. 560] (1920). But so too, '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as thought they were the same.' *Tigner v. Texas*, 310 U.S. 141, 147[, 84 L. Ed. 1124, 60 S. Ct. 879] (1940)."

The Court also noted: "In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that

the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler*, 457 U.S. at 216.

Martinez was not singled out by the sentencing court because of his race or nationality. It is possible for a resident alien lawfully in this country to successfully complete a plan of probation. So could an illegal alien who is not in violation of 8 U.S.C. § 1326. On the other hand, an illegal alien whose presence violates 8 U.S.C. § 1326 could not. The issue left unresolved is which category applies to Martinez.

Finally, we are not persuaded by Martinez' argument that the district court's decision to grant an appeal bond is irreconcilable with its decision to deny probation. The appropriateness of an appeal bond is not determinative of whether a substantial and compelling reason supports his departure sentence.

We do not presume to breach the line between interpreting and applying the law on one hand and establishing public policy on the other. We leave the latter task to our legislative branch. But our legislature, in enacting K.S.A. 2006 Supp. 21-4610(a), has mandated a provision in every probation plan that the defendant, during the term of probation, not violate the laws the United States. So long as this remains the law of our state, we must refrain from any activity that undermines its clear and unequivocal intent. Further, the sentencing court must be permitted to recognize an inherent conflict which may impede a defendant's successful compliance with a plan of probation which requires the defendant's continued presence in the jurisdiction and the defendant's compliance with the laws of the United States throughout the term of probation. Thus, if Martinez is present in the United States in violation of 8 U.S.C. § 1326 (previously deported), the district court may consider this fact in determining whether he could successfully complete a plan of probation.

### Notice of Intent to Depart

Martinez also claims he was not given notice or an opportunity to respond to the district court's intent to impose a departure sentence. In resolving this issue we must look to the requirements of K.S.A. 2006 Supp. 21-4718(a)(3). Whether these requirements

were met is an issue of law over which appellate courts exercise unlimited review. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

While Martinez did not raise this issue before the district court, the issue arises from undisputed facts and is limited to a question of law. Hence, we will address it. See *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005).

K.S.A. 2006 Supp. 21-4718(a)(3) states:

"If the court decides to depart on its own volition, without a motion from the state or the defendant, the court must notify all parties of its intent and allow reasonable time for either party to respond if requested. The notice shall state the type of departure intended by the court and the reasons and factors relief upon."

Here, the parties did not become aware of the sentencing court's intent to depart until the sentencing hearing. The sentencing court's notice of its intention to depart must be reasonable. "At a minimum, this means it must be provided at such a time and with such specificity that the defendant and the State have a fair opportunity to marshal and present their arguments for or against the proposed departure before sentence is pronounced." *State v. Carr*, 29 Kan. App. 2d 501, 503, 28 P.3d 436 (2001), *aff'd* 274 Kan. 442, 53 P.3d 843 (2002).

It is clear that the sentencing judge's notice of her intent to depart was inadequate. There was no advance notice prior to the actual sentencing hearing. When the sentencing judge gave notice of her intent to depart, Martinez was not provided an adequate opportunity to marshal and present his arguments against departure before sentence was pronounced. Consequently, the notice requirement of K.S.A. 2006 Supp. 21-4718(a)(3) was not satisfied, and we are required to vacate the sentence and remand for re-sentencing.

### BIDS Fees

Finally, Martinez challenges the district court's order that he reimburse BIDS for attorney fees because the court failed to explicitly consider on the record his ability to pay the fees. The State concedes that *State v. Robinson*, 281 Kan. 538, 132 P.3d 934

(2006), controls. Accordingly, we vacate the order for fees and remand for the sentencing court to comply with K.S.A. 2006 Supp. 22-4513 and the requirements of *Robinson*. However, with regard to the imposition of the BIDS application fee pursuant to K.S.A. 2006 Supp. 22-4529, we adopt the reasoning announced in *State v. Hawkins*, 37 Kan. App. 2d 195, 152 P.3d 85 (2007), *rev. granted* June 25, 2007 (review pending). The district court did not err in its assessment of the application fee.

Affirmed in part, sentence and order for attorney fees vacated, and case remanded with directions for resentencing and reconsideration of the assessment of attorney fees consistent with *Robinson*.

HILL, J., concurring: I concur with the result.