# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. WALTER PABLO

**Appeal from the Criminal Court for Shelby County**
**No. 06-03815; 07-01900     James M. Lammey, Jr., Judge**

---

### No. W2007-02020-CCA-R3-CD  - Filed July 30, 2008

---

The Appellant, Walter Pablo, appeals the sentencing decision of the Shelby County Criminal Court in ordering that his sentence for DUI, first offense, be served in total confinement. Pablo and the State reached a guilty plea agreement providing that he would plead guilty to DUI, leaving the scene of an accident, and failure to appear, and receive an effective sentence of eleven months and twenty-nine days, with fifteen days to be served in confinement and the balance to served on probation. At a guilty plea hearing, after questioning by the trial court, Pablo provided information to the court that he was a Mexican citizen, and that he did not know whether the federal authorities were aware of his presence in this country. After four days of guilty plea proceedings over a period from August 7, 2007, to August 28, 2007, during which Pablo was in confinement, the trial court rejected the guilty plea agreement insofar as it provided for a probationary sentence. Pablo was allowed the opportunity to withdraw his guilty plea, which he declined. The trial court then summarily sentenced Pablo to eleven months and twenty-nine days' incarceration in the workhouse for the DUI conviction. On appeal, Pablo argues that the trial court erred in denying him probation based solely upon his perceived status as an illegal alien. After review, we conclude that there was insufficient evidence to support the trial court's determination that Pablo's presence in the United States was unlawful and that the trial court's summary sentencing decision failed to consider relevant principles of sentencing in denying probation. Accordingly, we reverse the judgment of the trial court and remand for resentencing.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded for Sentencing Hearing**

DAVID G. HAYES, SR.J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ.

Tom Emerson Smith, Memphis, Tennessee; and Jeffrey Jones, Bartlett, Tennessee, for the Appellant, Walter Pablo.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Charles Bell, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background & Procedural History

On April 25, 2006, a Shelby County grand jury indicted the Appellant for driving while under the influence of an intoxicant, first offense, reckless driving, and leaving the scene of an accident involving injury. A second indictment was returned by a Shelby County grand jury on March 20, 2007, charging the Appellant with failure to appear in the criminal court with regard to the charge of driving while under the influence of an intoxicant.

At the guilty plea hearing held on August 7, 2007, the facts underlying the offenses were stipulated by the parties. The assistant district attorney represented to the trial court that the count charging the Appellant with failure to appear was "indicted as a misdemeanor." The State also announced to the trial court that the parties had reached a plea bargain agreement, and the prosecutor described its terms to the trial court as follows:

> Judge, [the Appellant] is before the Court in Indictment 06-03815. In that indictment, he's pleading guilty to first offense DUI, receiving a $650 fine, 11 months twenty nine days in jail with all but 10 days suspended, to be placed on probation for the remainder. His license will be suspended for one year. As part of his probation he is to attend Alcohol Safety School, do 30 hours community service, attend a [Mothers Against Drunk Driving] lecture and there's also $15 to the – contributed to the Brain Injury Fund.
>
> Count 2 [for reckless driving] will be nolle prossed. Count 3, pleading guilty to leaving the scene of an accident and that will be 10 days concurrent.
>
> Also before the [trial court] in Indictment 07-01900, in that indictment pleading guilty to failure to appear. He will receive 5 days consecutive to the first indictment named.

The trial court next questioned the Appellant at length, through a Spanish interpreter, regarding his rights and the terms of the guilty plea agreement, and the Appellant provided responses through the interpreter. The Appellant stated that he understood his rights and wished to plead guilty to the offenses as provided by the agreement with the State. When the trial court explained to the Appellant that he would have his driver's license revoked for one year as a result of the DUI conviction, the following exchange occurred:

| | |
|---|---|
| [Trial Court]: | Do you have a valid driver's license? |
| [The Appellant]: | (indiscernible) Tennessee. |
| [Trial Court]: | Do you have a valid driver's license for Tennessee? |
| [Defense Counsel]: | He doesn't have a Tennessee license, Judge. He has a license from out of state. |

| [Trial Court]: | Really. Which state is that? |
| [Defense Counsel]: | I think he said– |
| [The Appellant]: | Mexico. |
| [Trial Court]: | You have a driver's license from Mexico? |
| [The Appellant]: | Yes. |
| [Trial Court]: | And are you a United States citizen? |
| [The Appellant]: | No. I'm Mexican. |
| [Trial Court]: | All right. Are the authorities, the federal authorities, aware that you are in this country? |
| [The Appellant]: | I don't think so. |
| [Trial Court]: | Okay. Well, as part of probation I'm going to require that you contact them. |

The trial court further stated, "I have a problem with putting an illegal alien on probation out of my courtroom." The trial court directed defense counsel to obtain "some proof that the federal authorities are aware that [the Appellant]'s here before I place him on probation." The trial court agreed to resolve the issue the following morning, stating, "I'm willing to accept the guilty plea upon those conditions."

The hearing was continued the next morning, August 8, and defense counsel reported to the trial court that he had contacted "the federal office" and notified them of the Appellant's status and the present charges. Defense counsel represented that the federal authorities "checked in their computer and they had nothing that they wanted [the Appellant] on." Defense counsel further reported that he obtained "an affidavit and what [he] submitted to [the federal authorities] for their records." The trial court again expressed concern about placing the Appellant on probation and advised the parties that he needed more information and would "just have to hold this [case] to the heels of the calendar."

On August 10, the parties again appeared in the trial court for the purposes of resolving the guilty plea. The trial court stated

Well, it sort of causes me a dilemma. . . It's a definite dilemma. I have a probation order here and there's three things that cause me problems. Number 2 [of the conditions of probation] says procure consent of his case officer before changing their address, before leaving the county or residence of the state. Basically telling them that they have to stay within the state. I've done some research on this and it seems that provision is . . . contrary to the laws of . . . the United States. If I can find the appropriate statute.

8 U.S.C. § 1324(a)(1)(A) prohibits knowingly bringing, transporting, concealing, harboring or shielding from detection an illegal alien. It further prohibits encouraging or inducing an illegal alien to come into, enter or reside in the United States while knowing that these acts will be a violation of the law.

. . . .

And there's another part that says that they shall be employed, full-time employment. . . It makes reference to employment. You know, and of course in order to pay these fines and things of that nature – but it also says . . . 8 U.S.C. § 1324a(h)(2) provides that the provisions of this section preempt any state or local law imposing civil or criminal sanctions other than the licensing and similar laws upon those who employ or recruit or refer for a fee for employment unauthorized aliens.

Well, I mean . . . and it's illegal for someone to employ an illegal alien. So he can't work legally. I can't order him to work. That's the second problem I have. And then first and foremost, obey all the laws of the United States of America.

The trial court expressed doubt as to whether the Appellant's name was actually "Walter Pablo," as indicted, and further noted that "I heard [the Appellant] may have had a driver's license out of Florida but no one has produced one for me to see." The matter was again continued, apparently, in order for the Appellant to consider withdrawal of his guilty plea.

On August 28, the parties appeared before the trial court, and defense counsel indicated that the Appellant wished to enter a guilty plea to driving under the influence, leaving the scene of an accident, and failure to appear, and that the trial court's denial of probation would be appealed. Immediately following entry of the guilty pleas, the trial court sentenced the Appellant to eleven months and twenty-nine days' incarceration in the workhouse for the DUI conviction, to a concurrent sentence of ten days in the workhouse for the conviction for leaving the scene of an accident, and to a sentence of five days in the workhouse for failure to appear, which was ordered to run consecutively to the first two sentences. The trial court entered a written order setting forth its rationale for denying probation and entered judgments of conviction.[1]

**Analysis**

The Appellant challenges the trial court's denial of probation in this case. He argues that the record reflects that "the trial court's perception of the [Appellant]'s immigration status, as well as the trial court's perception as to the consequences of such, was the sole reason for denying probation to the [Appellant]." The Appellant submits that the trial court erred in failing to elicit testimony regarding the Appellant's "background, living conditions, health, current attempts at gaining legal residency or work visa status, family, or other facts and circumstances commonly gathered for sentencing purposes and hearings."

---

[1]Although the transcript and order demonstrate that the trial court intended to order that the eleven month and twenty-nine day sentence be served in the workhouse, the judgment form corresponding with the DUI conviction reflects a sentence of probation after service of ten days of confinement.

The Sentencing Act provides that, "[w]hen reviewing sentencing issues raised [by a defendant] pursuant to [this section], including the granting or denial of probation . . . , the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." *See State v. Stacey Joe Carter*, No. M2005-02784-SC-R11-CD (Tenn. at Nashville, May 19, 2008); *State v. Burdin*, 924 S.W.2d 82, 84 (Tenn. 1996); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also* T.C.A. § 40-35-401(d), -402(d) (2006). The presumption of correctness "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169.

In this case, we are unable to conduct a *de novo* review of the issue presented because no sentencing hearing was held by the trial court. Moreover, because the record fails to demonstrate that the trial court considered the sentencing principles and relevant facts and circumstances, the presumption of correctness is not afforded.

The Appellant was convicted of three Class A misdemeanors. Misdemeanor sentencing is governed by Tennessee Code Annotated section 40-35-302. In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to length and manner of the sentence. T.C.A. § 40-35-302(a) (2006). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. *Id.* §§ 40-35-104, -117, and -302; *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995).

A defendant convicted of driving under the influence automatically receives a sentence of eleven months and twenty-nine days. Accordingly, enhancement and mitigating factors are not used in determining the length of a DUI sentence. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). Trial judges are merely required to "consider enhancement and mitigating factors when calculating the percentages of a misdemeanor sentence to be served in confinement." *Id.* at 274. "[W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *Id.*

On August 7, 2007, the parties appeared before the trial court for the purpose of entering guilty pleas as provided by the negotiated plea agreement. Upon questioning by the trial court with regard to the Appellant's citizenship, the Appellant replied that he was not a United States citizen. Based upon this response, the trial court continued the hearing until the following morning, at which point defense counsel represented to the trial court that he had contacted the appropriate federal authorities regarding the Appellant's presence in the country, and that they appeared to have no interest in the Appellant. The guilty plea hearing was resumed later in the week, and the probation issue remained unresolved at that time. Approximately eighteen days later, the Appellant declined the opportunity to withdraw the guilty pleas after he had already served the originally agreed upon incarcerative sentence. Upon accepting the Appellant's plea of guilty to DUI, first offense, the trial

court imposed a sentence of eleven months and twenty-nine days confinement in the workhouse.

The trial court based its decision to deny probation solely on a finding that the Appellant is an illegal alien. In *State v. Martinez*, 38 Kan. App. 2d 324 (Kan. Ct. App. 2007), the Kansas Court of Appeals was faced with a similar situation in which a trial court had denied probation based upon a conclusion that the defendant's mere presence as an illegal alien rendered him incapable of complying with the law. The court noted:

> Had [the defendant] been placed on probation with the essential requirement that he comply with all applicable laws, the [trial court] could expect this to include the duty to register with the immigration authorities as required by 8 U.S.C. § 1302(a) (2000), to report his ongoing whereabouts as required by 8 U.S.C. § 1305(a) (2000), and to otherwise conform his conduct to our civil and criminal laws. Thereafter, the district court could find him to be in violation of his probation if he failed to do so.

*Martinez*, 38 Kan. App. 2d at 328-29. The court further stated:

> 8 U.S.C. § 1325(a) (2000) declares an alien's unsanctioned entry into the United States to be a crime. . . .
> . . . .
> While in this country one whose presence is unlawful remains subject to the full range of obligations imposed by our laws. However, while Congress has criminalized the illegal entry into this country, it has not made the continued presence of an illegal alien in the United States a crime unless the illegal alien has previously been deported and has again entered this country illegally. 8 U.S.C. § 1326 (2000) makes it a felony for an alien who has been deported to thereafter reenter the United States or at anytime thereafter be found in the United States.
> . . . .
> Those persons who enter this country illegally are subject to deportation. 8 U.S.C. § 1227 (2000). . . . However, while an illegal alien is subject to deportation, that person's ongoing presence in the United States in and of itself is not a crime unless that person had been previously deported and regained illegal entry into this country. *See United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193-94 (9th Cir. 1979). As noted by the United States Supreme Court in *United States v. Cores*, 356 U.S. 405, 408 n. 6, 2 L. Ed. 2d 873, 78 S. Ct. 875 (1958), when it commented on 8 U.S.C. § 1325 and similar statutes: "Those offenses are not continuing ones, as 'entry' is limited to a particular locality and hardly suggests continuity."

*Id*. at 331.

The State relies upon the unpublished decision of *People v. Cesar Hernandez-Clavel*, No. 06CA1807 (Colorado Court of Appeals, Div. IV, Feb. 7, 2008), in support of its argument that "a defendant's inability to comply with a condition of probation is relevant to whether a probation

sentence would be at all effective." While we do not dispute that evidence of a defendant's illegal presence in this country may be a relevant factor in a trial court's decision on whether to grant or deny probation, in the case relied upon by the State, there was ample evidence in the record before the Colorado Court of Appeals of the defendant's illegal status. *See People v. Cesar Hernandez-Clavel*, No. 06CA1807 (e.g., defendant "had been back and forth across the border several times . . . [defendant] admitted using false residence cards to obtain entry into this country . . . [defendant] had a 2006 conviction for attempted illegal entry and had received a three-day jail sentence . . . [defendant] was not legally able to obtain employment . . . [U.S. Immigration and Customs Enforcement] recently had placed an immigration hold on defendant, and unless it released the hold, defendant would be deported either immediately, if sentenced to probation, or as soon as he had finished [an incarcerative] sentence . . . ."). Conversely, in this case the record is absent proof, aside from the single statement of the Appellant that he did not think the federal authorities were aware of his presence in the country, to support a finding that the Appellant's mere presence in the United States was unlawful.

"The courts have long recognized that the decision whether to grant probation to a deportable alien presents special issues." *People v. Espinoza*, 107 Cal. App. 4th 1069, 1074 (Cal. Ct. App. 2003) (trial court free to exercise discretion to deny probation where defendant faces substantial likelihood of deportation); *see also People v. Sanchez*, 190 Cal. App. 3d 224, 231 (Cal. Ct. App. 1987) ("We do not suggest illegal alien status should preclude the granting of probation. Rather, we conclude only that such fact may properly be considered by the sentencing court *with all other relevant factors* in exercising its discretion in this regard.") (emphasis added). We are unable to conclude that the evidence preponderates in favor of a finding that the Appellant conceded that his presence in the United States is unlawful or that he is subject to removal, and no evidence was submitted by the State in this regard. We further note that there exist avenues, as set forth in the United States Code, by which citizens of other countries may have a legitimate and legal presence in the United States. Moreover, the trial court's decision to deny probation and to order a sentence of total confinement as to the DUI conviction ignored established criteria in determining whether total confinement or probation should be granted, including whether there is an undue risk that the offender is likely to re-offend and the defendant's amenability for correction. Accordingly, we reverse the sentence imposed by the trial court for the offense of DUI, first offense and remand for resentencing.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

DAVID G. HAYES, SENIOR JUDGE