NOT DESIGNATED FOR PUBLICATION

No. 128,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICARDO RAYMUNDO-LOPEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed June 5, 2026. Reversed and remanded.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: Ricardo Raymundo-Lopez was convicted of drug crimes and sentenced to 177 months in prison in 2016. But the district court granted a dispositional departure to 36 months' probation. A few weeks later, Raymundo-Lopez' probation officer filed a probation violation warrant stating Raymundo-Lopez failed to report for probation because he was deported.

Raymundo-Lopez was arrested in Texas in 2024 and extradited to Kansas based on the 2016 probation violation warrant. The State then filed a second probation violation

warrant based on Raymundo-Lopez' failure to comply with other terms of his probation, including adding that he absconded from supervision when he was deported and that he was subject to a U.S. Immigration and Customs Enforcement (ICE) detainer or "hold" for entering the United States illegally. An immigration detainer is a request from ICE that asks a federal, state, or local law enforcement agency (1) to notify ICE as early as possible before the agency releases the individual, or (2) to hold the individual for up to 48 hours beyond the time the agency would ordinarily release the individual so the Department of Homeland Security has time to assume custody in accordance with federal immigration law. www.ice.gov/immigration-detainers.

The district court revoked Raymundo-Lopez' probation and imposed a modified prison sentence of 80 months. The stated reasons for bypassing the intermediate sanctions normally required by K.S.A. 22-3716 were that Raymundo-Lopez absconded from probation and, in the alternative, that Raymundo-Lopez' welfare would not be served by continued probation "due to his prior deportation and the current ICE hold that will likely result in a second deportation at some point."

On appeal, Raymundo-Lopez contends the district court erred when it revoked his probation because our court has held deportation does not constitute absconding and potential deportation is not a sufficient reason to support the offender welfare exception under K.S.A. 22-3716(c)(7).

Raymundo-Lopez is correct. Under Kansas law, deportation does not amount to absconding. See *State v. Maturino-Ruiz*, No. 118,114, 2019 WL 3978332, at *3 (Kan. App. 2019) (unpublished opinion). We also find the district court failed to state with particularity why the imposition of intermediate sanctions would not serve Raymundo-Lopez' welfare. Simply finding that he may face deportation sometime in the future is not enough to support this determination. We therefore reverse the district court's decision to

revoke Raymundo-Lopez' probation and remand with instructions to sentence him to an intermediate sanction and reinstate probation.

FACTUAL AND PROCEDURAL BACKGROUND

Raymundo-Lopez pled guilty to possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of proceeds from drug crimes in 2016. The parties moved for dispositional departure, asking the court to grant probation because Raymundo-Lopez accepted responsibility for his actions, did not have recent felony criminal history, and, after sentencing, Raymundo-Lopez would return to ICE custody and be deported.

The district court sentenced Raymundo-Lopez to 177 months in prison but granted the parties' request for dispositional departure and ordered Raymundo-Lopez to serve 36 months' probation. After sentencing, Raymundo-Lopez was deported from the United States.

In October 2016, a probation officer issued a probation violation warrant for Raymundo-Lopez' arrest for "fail[ing] to report to his ISO [intensive supervision officer] due to deportation." Nearly eight years later, in August 2024, Raymundo-Lopez was arrested in Texas, and extradited to Kansas. Then in September 2024, another probation violation warrant was issued, alleging (1) he failed to attend or obtain his drug/alcohol evaluations as directed, (2) he failed to start his GPS house arrest as directed, (3) he illegally entered the United States and had an ICE hold, (4) he failed to make monthly payments on his court costs, and (5) he absconded from supervision.

The district court held a probation revocation hearing where Raymundo-Lopez admitted to the charges in both the 2016 and 2024 warrants. Raymundo-Lopez asked the court to "consider some medium-level supervision where he can start from scratch again

3

and—and do everything as needed by the probation." The State and the ISO both recommended that the district court impose Raymundo-Lopez' underlying sentence. In support of this request, the State asked the district court to find that Raymundo-Lopez had absconded from probation, and, in the alternative, to find that it was not in Raymundo-Lopez' welfare to continue probation because he would unlikely be able to participate in any of the programs due to another pending deportation order.

Based on Raymundo-Lopez' admissions to the allegations in the warrants, the district court found he violated his probation. It revoked Raymundo-Lopez' probation and imposed a modified prison sentence of 80 months. In making this decision, the court stated that it did not consider the new crime of entering the United States illegally because it found this occurred after the original probation term had ended.

To support its decision to bypass the intermediate sanctions normally required by K.S.A. 22-3716 for a probation violation, the district court found that Raymundo-Lopez had absconded from supervision on probation. It additionally said:

> "I'm also going to make further findings with regard to the defendant's welfare under K.S.A. 22-3716. And I'm going to find that requiring the defendant to serve an intermediate sanction, which would simply be a 48- or 72-hour quick dip jail sanction, as this is his first PV [probation violation] hearing, and then reinstatement of probation would not serve the defendant's welfare, due to his prior deportation and the current ICE hold that will likely result in a second deportation at some point."

Raymundo-Lopez appealed the revocation of his probation. He asks us to remand his case for imposition of an intermediate sanction and reinstatement of his probation.

Raymundo-Lopez does not contest the district court's finding that he violated his probation. Instead, he contends the court was required to impose an intermediate sanction and reinstatement of probation because the conditions in K.S.A. 22-3716(c)(7) which allow a court to bypass intermediate sanctions were not met.

*Standard of Review and Relevant Legal Framework*

District courts have the discretion to revoke an offender's probation and to order the offender to serve the original sentence unless limited by statute. *State v. Dooley*, 308 Kan. 641, 647, 423 P.3d 469 (2018) (*Dooley I*); see also K.S.A. 22-3716(b), (c) (requiring intermediate sanctions before revocation in certain circumstances). We review a district court's revocation of probation and the imposition of an underlying sentence for abuse of that discretion. A district court abuses its discretion only if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on factual error. Because Raymundo-Lopez asserts error, he bears the burden to establish an abuse of discretion. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022).

The Revised Kansas Sentencing Guidelines Act requires a district court to impose intermediate sanctions for probation violations unless the court determines certain statutory exceptions apply. K.S.A. 22-3716(c). Here, the two exceptions the district court relied on were: (1) its finding that Raymundo-Lopez absconded from supervision, and (2) its finding that Raymundo-Lopez' welfare would not be served by intermediate sanctions. K.S.A. 22-3716(c)(7)(A), (D).

Since the district court's determination that Raymundo-Lopez absconded involves a mixed question of fact and law, we apply a bifurcated standard of review to that finding. Legal conclusions are subject to unlimited review, while disputed factual

findings are reviewed under the substantial competent evidence standard. *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021) (*Dooley II*).

*Deportation does not constitute absconding.*

In finding that Raymundo-Lopez absconded, the district court relied on the definition from *State v. Huckey*, 51 Kan. App. 2d 451, 455, 457, 348 P.3d 997 (2015):

> "[F]rom Black's Law Dictionary[,] [a]bscond is defined as: 'To depart secretly or suddenly, especially to avoid arrest, prosecution or service of process.'
>
> . . . .
>
> "The definition of abscond from Black's Law Dictionary serves as the standard. There must be more than just failing to report. If the imposition of intermediate sanctions is to be avoided in the event probation is revoked due to the probationer absconding from supervision, the State must allege that the probationer has absconded. At an evidentiary hearing the State must prove by a preponderance of the evidence that the probationer has absconded."

But this court clarified more recently, to have absconded, someone must have "engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process." *Dooley I*, 308 Kan. at 657. And, also since *Huckey*, we have found that deportation does not amount to absconding. See *Maturino-Ruiz*, 2019 WL 3978332, at *3. In *Maturino-Ruiz*, the defendant was sentenced to 48 hours in jail, followed by 90 days of house arrest, and then 12 months' postrelease supervision. During his house arrest, after attending hearings on his residency status, he chose to voluntarily self-deport from the United States—an option that allows individuals to avoid a formal removal order that imposes a bar on reentry to the United States for a specified period of time. 2019 WL 3978332, at *1; see 8 U.S.C. § 1182(a)(9).

The State argued that because Maturino-Ruiz chose to voluntarily exit the United States, he absconded. *Maturino-Ruiz*, 2019 WL 3978332, at *2. But our court found that

6

a voluntary departure based on pending deportation proceedings is insufficient to constitute absconding. 2019 WL 3978332, at *3. We noted that Maturino-Ruiz "was presented with the choice of either following the immigration judge's order and self-deport, or violating the judge's order, refusing to self-deport, and therefore fac[e] either forceful deportation or an outstanding warrant for evading the law." 2019 WL 3978332, at *3. There was thus no evidence that Maturino-Ruiz "'engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process.'" 2019 WL 3978332, at *3.

As in *Maturino-Ruiz*, the record reveals no evidence that Raymundo-Lopez "'engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process.'" 2019 WL 3978332, at *3. Raymundo-Lopez had no genuine choice because he was forcibly removed from the United States, which deprived him of any opportunity to fulfill the traditional probation requirements imposed by the district court. We therefore find the district court erred when it relied on the absconding exception to bypass the intermediate sanctions required by K.S.A. 22-3716 for Raymundo-Lopez' probation violation.

*Raymundo-Lopez' admission is insufficient because the State must still present substantial competent evidence that he absconded.*

The State argues that Raymundo-Lopez' admission to absconding at the probation revocation hearing was sufficient to invoke the absconding exception. But our Supreme Court has found that, despite a defendant's admission to absconding, the State still must provide substantial competent evidence to support the condition precedent that the defendant absconded from supervision while on probation. See *Huckey*, 51 Kan. App. 2d at 457 (State must allege and prove by preponderance of evidence that probationer absconded to allow court to avoid intermediate sanctions); *State v. Raiburn*, 289 Kan.

319, 332, 212 P.3d 1029 (2009) (State has burden to allege and prove appellant absconded to invoke fugitive disentitlement doctrine).

While the "district court can use [defendant's] stipulations to the underlying facts, e.g., [defendant's] agreement that he failed to report to community corrections or failed to report his whereabouts . . . the determination of whether the State proved that [defendant] absconded from supervision must be determined by the district court." *Dooley I*, 308 Kan. at 658.

Thus, Raymundo-Lopez' admission to the allegations of the second probation violation warrant alone is not sufficient to constitute a legal finding of absconding.

*The district court did not set forth with particularity how the welfare of Raymundo-Lopez will not be served by intermediate sanctions.*

To be set forth with particularity, a finding "'must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *Dooley I*, 308 Kan. at 652. Because the statute requires the court to set forth with particularity the reason for finding the offender welfare exception applies, "'an implicit determination is not enough.'" 308 Kan. at 652.

For example, in *Dooley I*, "the State suggested that the district court's comments about Dooley's inability to take advantage of several probation opportunities and the seriousness of his violations 'could be construed to support [the K.S.A. 22-3716(c) offender-welfare] finding.'" 308 Kan. at 652. This court disagreed, finding that the discussion of Dooley's inability to take advantage of probation opportunities was not akin to discussing Dooley's welfare. 308 Kan. at 652.

Here, when discussing the welfare exception, the district court stated:

8

"I'm also going to make further findings with regard to the defendant's welfare under K.S.A. 22-3716. And I'm going to find that requiring the defendant to serve an intermediate sanction, which would simply be a 48- or 72-hour quick dip jail sanction, as this is his first PV [probation violation] hearing, and then reinstatement of probation would not serve the defendant's welfare, due to his prior deportation and the current ICE hold that will likely result in a second deportation at some point.

"And the defendant's current federal hold for likely federal prosecution on illegal re-entry into the U.S., that all of this will wholly prevent the defendant from being able to comply with any conditions of probation if he were to be reinstated. So, again, therefore, reinstatement of the defendant would not be in his welfare. So I'm making those findings as an additional basis to revoke the defendant."

Thus, the district court's only basis for finding that it would not be in Raymundo-Lopez' best interest to be given an intermediate sanction is that he was deported previously and would likely be again. There were no findings that pertained specifically to Raymundo-Lopez' welfare.

This court has found that conclusory statements about a defendant's inability to comply with the conditions of probation are insufficient to explain why a defendant's welfare would not be served by imposition of intermediate sanctions. See *State v. McFeeters*, 52 Kan. App. 2d 45, 48-49, 362 P.3d 603 (2015); see also *State v. Duran*, 56 Kan. App. 2d 1268, 1276, 445 P.3d 761 (2019) ("[I]f courts can make an offender welfare finding because a person might violate his or her probation again, the exception will swallow the rule."). We have also repeatedly rejected statements that a defendant is not amenable to probation in general, as they do not satisfy the requirement to state with particularity why the imposition of intermediate sanctions will not serve a defendant's welfare. See *State v. Collins*, No. 117,116, 2019 WL 986315, at *4 (Kan. App. 2019) (unpublished opinion) ("'[Y]our inability or unwillingness to abide by terms and conditions of probation are a public safety concern. You're obtaining meth from somewhere. . . . [T]hat fuels an illegal subculture. Drug deals obviously invoke safety

concerns. . . . [Y]ou will again offend and pick up new charges, get another sentence.'"); *State v. Shanholts*, No. 118,911, 2019 WL 1303165, at *4 (Kan. App. 2019) (unpublished opinion) ("'I'll also find that the welfare of the defendant would not be served by continuing probation. It doesn't serve anybody any good to continue on a probation that she's not going to follow. So I'll make that specific finding.'"). The Kansas Supreme Court has made it clear that the Legislature's new probation scheme (adopted in 2013) requires more than a generalized finding that the defendant is not amenable to probation to bypass mandatory intermediate sanctions. *Duran*, 56 Kan. App. 2d at 1275.

Here, speculation and conclusory statements are all the district court relied on. It speculated that Raymundo-Lopez would be deported, and it made conclusory statements that he could not comply with the terms of probation if he is deported. But our court has found a defendant's inability to perform on probation due to a pending deportation was not a legal basis to bypass intermediate sanctions. See *State v. Mendez*, No. 123,936, 2022 WL 496802, at *3 (Kan. App. 2022) (unpublished opinion). Similarly, we have rejected a court's reliance on a defendant's status as an illegal alien as a reason to depart from a presumptive probation sentence. See *State v. Martinez*, 38 Kan. App. 2d 324, 329, 165 P.3d 1050 (2007). And, again, the district court did not rely on Raymundo-Lopez' apparent illegal re-entry into the United States as a reason to revoke his probation. It relied on his suspected inability to comply with the terms of his probation based on future deportation.

The district court's conclusory statement that Raymundo-Lopez was incapable of complying with the specific terms of his probation was also not supported by the record. The court did not explore, nor did it make any findings on whether modifications could be made to the traditional terms of probation which would allow, for example, reporting by telephone or mail, if Raymundo-Lopez was indeed deported. Instead, the court speculated that Raymundo-Lopez would be unable to comply because it speculated that he would be deported based on the ICE detainer and Raymundo-Lopez' past deportation.

10

But a court's speculation that a defendant will violate probation is insufficient reason to find a defendant's welfare will not be served by the statutorily required intermediate sanctions. See *Shanholts*, 2019 WL 1303165, at *3 (K.S.A. 2017 Supp. 22-3716[c][9] mandates that before the district court may bypass intermediate sanctions, it must conclude that the defendant's welfare will not be served by the imposition of those sanctions, not whether the defendant is amenable to probation in general).

We find the situation in *State v. Santiapillai*, No. 115,215, 2017 WL 2212086 (Kan. App. 2017) (unpublished opinion), analogous. Santiapillai was not in the United States legally when he was convicted of various crimes. The presumptive sentence for his crimes was probation, but the State successfully moved for a dispositional departure to prison by claiming Santiapillai was unamenable to probation because he was facing deportation. 2017 WL 2212086, at *4-5. Our court reversed that decision after finding the district court did not consider its power to set the terms of Santiapillai's probation. We also noted the backlog of immigration proceedings meant it was not clear that Santiapillai could not serve his probation before being deported. 2017 WL 2212086, at *7.

As we noted in *Santiapillai*, other than a few statutorily required conditions, a district court has broad discretion to impose any probation conditions it deems proper. The only mandatory conditions are that the defendant must: (1) make reparation or restitution to the victim for the damage or loss caused by the crime, (2) pay a correctional supervision fee (unless waived by the judge if the person is unable to pay it), and (3) reimburse the state general fund for all or part of the expenditures by the State Board of Indigents' Defense Services to provide counsel or defense services to the defendant (unless waived by the judge because payment would impose manifest hardship on the defendant or the defendant's immediate family). K.S.A. 21-6607(c). Likewise, the district court here did not consider its ability to fashion probation terms which could address Raymundo-Lopez' immigration situation or whether he could serve his probation before being deported.

With this legal backdrop, we cannot find the district court's determination that probation would be futile—based only on the fact that Raymundo-Lopez was facing deportation—sufficiently supported its conclusion that intermediate sanctions would not serve his welfare.

CONCLUSION

The reasons the district court gave for bypassing intermediate sanctions and revoking Raymundo-Lopez' probation were not legally or factually supported. Deportation does not constitute absconding because it deprives defendants of any genuine choice to comply with probation, regardless of whether they self-deport voluntarily or are forcibly removed. And the district court did not adequately demonstrate with particularity how Raymundo-Lopez' welfare would not be served by a statutorily required intermediate sanction.

Reversed and remanded.