NOT DESIGNATED FOR PUBLICATION

No. 122,052

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW L. COLE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 9, 2020. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.


PER CURIAM: Matthew L. Cole appeals the district court's decision to revoke his probation and serve a modified term of his underlying prison sentence. Cole claims the State presented insufficient evidence to establish he violated the conditions of his probation. Cole also claims the district court failed to make the requisite particularized factual findings that public safety considerations warranted revocation without an intermediate sanction. We find the district court's explanation of its decision to revoke was sufficiently detailed to support the determination to revoke and, therefore, we affirm.

1

On March 19, 2019, Cole pled no contest to one count of felony possession of methamphetamine and one count of misdemeanor possession of marijuana. At the plea hearing, the district court found Cole guilty of those charges. According to the presentence investigation (PSI) report, these new charges placed Cole in a border box on the sentencing grid. That means the district court could sentence Cole to either prison or probation—but the presumptive sentence is prison. See K.S.A. 2018 Supp. 21-6804(f), (q). Before sentencing, Cole's attorney filed a motion asking the district court to impose a nonprison sanction, which the State did not challenge. On May 10, 2019, the district court sentenced Cole to 30 months in prison but granted him 12-months' probation. As part of Cole's probation, he was required to report to his Intensive Supervision Officer (ISO) as required; prohibited from illegally possessing or using any nonprescribed controlled substances, narcotics, or other drugs; and prohibited from possessing or transporting a firearm.

On May 29, 2019—a little over two months after the district court granted him probation in lieu of imposing his underlying prison sentence—Cole stipulated to violating the terms of his probation on three separate occasions: He admitted to using methamphetamine on two of those occasions and failing to report to his ISO as required on the other occasion. Cole waived his right to a probation violation hearing and accepted the community correctional services director's decision to impose an intermediate sanction of three days in the county jail. See K.S.A. 2018 Supp. 22-3716(b)(4)(B).

On June 21, 2019—three weeks after serving his three-day quick dip in jail—Cole once again stipulated to violating the terms of his probation when he admitted to using methamphetamine. Cole waived his right to a probation violation hearing and accepted the community correctional services director's decision to impose an intermediate sanction of two days in the county jail. See K.S.A. 2018 Supp. 22-3716(b)(4)(B).

On July 10, 2019, the State filed a motion to revoke Cole's probation alleging that he violated the terms of his probation for a third time. The Stated specifically alleged that Cole failed to report to his ISO as required after being released from jail; tested positive for, and admitted to using, methamphetamine on July 2, 2019 (less than two weeks after serving his two-day quick dip); was involuntarily discharged from the halfway house as a result; and failed to attend outpatient treatment as directed. At the probation violation hearing on July 12, 2019, Cole stipulated to the violations outlined in the State's motion. The district court found Cole violated his probation but, rather than revoking Cole's probation, the court ordered him to serve a 60-day jail sanction. The court directed that Cole could be released to an inpatient treatment program after serving 30 days of the 60-day sanction.

On August 22, 2019, about six weeks after the district court ordered his 60-day jail sanction, the State filed a second motion to revoke alleging that Cole once again violated the terms of his probation. The motion alleged that Cole used methamphetamine on August 18, 2019, and was unsuccessfully discharged from inpatient treatment on August 20, 2019, as a result of his methamphetamine use.

On September 27, 2019, Hutchinson police officers arrested Cole for theft and criminal possession of a firearm. On October 1, 2019, the State amended its August 22 motion to include allegations that the factual basis for his arrest constituted illegal activity in violation of the conditions of his probation.

On October 10, 2019, the district court held an evidentiary hearing to determine whether Cole violated the following conditions of his probation:

1. unsuccessful discharge from inpatient treatment based on his admission that he used methamphetamine while in inpatient treatment;

3

2. admitting on August 20, 2019, that he used methamphetamine on August 18, 2019; and

3. engaging in illegal activity of theft and criminal possession of a firearm as referenced in Hutchinson Police Department case 2019-24292.

At the hearing, the State presented testimony from the director of Cole's former inpatient treatment program and from the law enforcement officer who arrested Cole on September 27, 2019. James Jones, the director of the inpatient treatment program, testified that during a group session, Cole admitted that he recently used marijuana. Jones testified that he thought Cole also admitted to recently using methamphetamine as well, but Jones could not remember offhand. As a result of his admitted drug use, Cole was unsuccessfully discharged from inpatient treatment on August 20, 2019.

The State then called Hutchinson Police Officer Cory Schmidt to the stand. Schmidt testified that he pulled over a car on September 27, 2019. Daquiri Heironimus was driving the car, and Cole was riding in the front passenger seat. Heironimus and Cole were both listed as owners of the car. Schmidt ultimately searched the car and found a loaded handgun under the front passenger seat. Schmidt later determined that this gun had been reported as stolen. While Schmidt was searching the car, Cole asked Schmidt to retrieve Cole's personal items from the car: his chewing tobacco and a gallon of tea. Schmidt found the chewing tobacco on the front passenger seat, and he found the tea on the front passenger floorboard. On cross-examination, Schmidt testified that the State had not yet filed a felon in possession of a firearm charge against Cole because it sent the handgun to the Kansas Bureau of Investigation for DNA testing and fingerprint analysis and was waiting for those results.

Cole called his ISO, Brennan Hadley, to the stand. Hadley testified that, to the best of his knowledge, Cole had clean urinalysis test results, attended outpatient treatment, and engaged in peer mentoring for the approximately five weeks from August 20, 2019,

4

through September 27, 2019. These five weeks represent the time period from Cole's unsuccessful discharge from inpatient treatment to the arrest for his most recent probation violation.

At the close of evidence, the State asked the district court to modify its amended motion to revoke. Specifically, the State sought to modify the basis for the first and second allegations:

1. Cole's unsuccessful discharge from inpatient treatment was based on his admission that he used an illegal substance—rather than methamphetamine specifically—while in inpatient treatment; and
2. Cole admitting on August 20, 2019, that he used an illegal substance—rather than methamphetamine specifically—on August 18, 2019.

The State then requested that the district court revoke Cole's probation and order him to serve his underlying 30-month prison sentence. In response, Cole's attorney argued that the State failed to prove that Cole was ever in possession of the handgun because it was found underneath Cole's seat—not on his person—and the case was still pending further investigation because the State did not have enough evidence to charge him. Defense counsel also argued that there was no evidence presented about the theft charge. Cole's counsel urged the court to consider the ISO's testimony and to reinstate Cole's probation so that he could continue with his treatment.

The district court denied the State's request to modify its amended motion because Cole did not have notice of the more general allegation that he admitted to using an illegal substance as opposed to the more specific allegation that he admitted to using methamphetamine. The court then noted it was proceeding solely on the allegation that Cole possessed a firearm in violation of his probation conditions. Based on the evidence presented, the court determined the State had met its burden to establish by a

preponderance of the evidence that Cole possessed the handgun. The court was persuaded by Officer Schmidt's testimony that Cole was a coowner of the car, the gun was found underneath Cole's seat, and Cole's personal items were in close proximity to the gun. Based on this evidence, the court found Cole violated the conditions of his probation and revoked it.

Having revoked Cole's probation, the district court turned to disposition. Although it did not consider Cole's unsuccessful discharge from inpatient treatment or his admission to the use of illegal substances in its revocation decision, the court stated it certainly could consider these and other factors in arriving at a disposition. The court first considered Cole's extensive criminal history, including a previous conviction for possession of a firearm by a felon. The court noted that Cole received probation in that case and that it also had been revoked. The court described how Cole went to prison for a short period of time, how he got out and committed a "more serious violent offense," how he went back to prison in 2010 for four years, and how for two years after his release Cole failed to abide by the terms of his parole. The court then stated:

> "He gets this new case. He's placed on Community Corrections. He has a 2-day and a 3-day [quick dip] because he can't quit using methamphetamine. He's given a chance to get into inpatient treatment. One of the, the violation before this one was being kicked out of inpatient treatment. Now, we have a situation where he's kicked out of [inpatient treatment]."

Notwithstanding these statements, the district court noted it was not making a dispositional decision solely based on Cole's inability to deal with his apparent methamphetamine addiction. Instead, the court considered Cole's inability to resolve his methamphetamine problem while on probation in conjunction with Cole's unlawful possession of a firearm and then determined that public safety would be jeopardized if the court were to place Cole back on probation:

6

"The court's view, and I, certainly I have no concept at all what the solution is in dealing with methamphetamine, but a very, very small group of people are able to deal with it. The vast majority cannot. But the situation here is I am not here today making a decision based on the fact that Mr. Cole has a methamphetamine, a problem that he clearly cannot deal with. He's a convicted felon with previous violent convictions, he's caught with a loaded handgun.

. . . .

"There's a balancing test with Mr. Cole dealing with his methamphetamine problem. I don't see that he's able to deal with that on his own. The other side is the safety of the community and people on, who have prior crimes of violence who have in their possession, as I have found today, illegal handgun, poses a danger to the community."

The district court ordered Cole to serve a modified 24-month prison sentence.

In recording the journal entry of judgment, the district court stated its findings from the evidentiary hearing: there was sufficient evidence to establish Cole violated the conditions of his probation on September 27, 2019, by engaging in illegal activity of misdemeanor theft and criminal possession of a firearm by a felon as referenced in the Hutchinson Police Department police report from case 2019-24292. In bypassing the statutory 120-day intermediate sanction and ordering Cole to serve a modified 24-month prison sentence, the court checked the box indicating "public safety or offender welfare finding" pursuant to K.S.A. 2018 Supp. 22-3716(c)(9)(A).

ANALYSIS

Cole raises two issues on appeal: insufficient evidence to support the district court's finding that he violated the conditions of his probation and the court's failure to make the requisite particularized factual findings that public safety considerations warranted revocation without an intermediate sanction.

7

A district court's decision to revoke probation involves two steps: (1) a factual determination that the probationer violated a condition of probation and (2) a discretionary determination as to whether the proved violation warrants revocation of probation. *State v. Skolaut*, 286 Kan. 219, 227-29, 182 P.3d 1231 (2008). The State must establish a probation violation by a preponderance of the evidence. A preponderance of the evidence means evidence that is "'of greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). We review the district court's factual finding that a violation occurred for substantial competent evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). After a violation has been established, the decision to reinstate probation or to revoke and incarcerate the probationer rests within the sound discretion of the district court. See *Skolaut*, 286 Kan. at 227-28.

*Sufficiency of the evidence*

On appeal, Cole argues there was insufficient evidence to support a finding that he possessed the handgun in violation of K.S.A. 2019 Supp. 21-6304(a), which prohibits a felon from possessing a handgun. First, Cole claims that the State failed to prove by a preponderance of the evidence that he was a convicted felon and that his status as a felon prohibited him from unlawfully possessing a firearm. Specifically, he asserts the State failed to present evidence of any recent felony convictions. Second, he claims the State did not establish by a preponderance of the evidence that Cole knew the handgun was under the front passenger seat of the car. This is because, he claims, there is another more likely explanation as to how the gun made its way there: Heironimus put it there before Cole got inside. Cole argues that the proximity of his belongings to the gun is of little consequence as Heironimus is a coowner of the car and had equal control of the contents inside. Cole further argues that because Heironimus was driving the car on the day in question, she arguably had more control over the car's contents than did Cole.

With regard to his first claim, we note that the district court did not find Cole violated the conditions of his probation by violating K.S.A. 2019 Supp. 21-6304(a). Instead, the court found by a preponderance of the evidence that Cole possessed a firearm and that, in doing so, he violated the conditions of his probation. Because there was no need for the State to show by a preponderance of the evidence that he was a felon, Cole's first argument necessarily fails. But even if the State had been required to make that showing, the underlying conviction on Cole's probation was a felony: possession of methamphetamine conviction. So the court easily could have found by a preponderance of the evidence that Cole was a felon.

With regard to his second claim, we are not persuaded that dual ownership of the vehicle and joint control of the contents inside the vehicle undermines the district court's finding by a preponderance of the evidence that Cole possessed the handgun. Because the gun was found in a car that both he and Heironimus owned and it was not found on his person, Cole asks this court to apply the nonexclusive possession factors outlined *State v. Rosa*, 304 Kan. 429, 371 P.3d 915 (2016). *Rosa* involves a case where a defendant challenged whether there was sufficient evidence to sustain a methamphetamine possession conviction when the methamphetamine was found in a house the defendant owned and lived in, but that evidence was specifically located in his roommate's bedroom. 304 Kan. at 430-31, 435. When a home or vehicle is not exclusively occupied, the Kansas Supreme Court looks to the following factors to establish possession in drug cases: a defendant's previous participation in drug sales, a defendant's prior drug use, a defendant's proximity to where the drugs were found, and whether the drugs were found in plain view. The court may also consider a defendant's incriminating statements and suspicious behavior. While no individual factor by itself is sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession beyond a reasonable doubt. 304 Kan. at 434.

9

As noted above, these factors were applied in a drug possession case—not in a firearm possession case. However, a panel of this court recently applied these same nonexclusive factors in a case to determine whether there was sufficient evidence to support a criminal possession of a firearm conviction. See *State v. Mitchell*, No. 120,702, 2020 WL 2089639, at \*2-4 (Kan. App. 2020) (unpublished opinion) (finding sufficient evidence existed that defendant illegally possessed the firearm because he originally admitted to possessing it, it was in a motel room where defendant was staying, defendant was in the motel room's immediate vicinity at the time of his arrest, and his belongings were in close proximity to where the gun was found), *petition for rev. filed* June 1, 2020. Therefore, these factors are instructive and can be applied in determining whether there was sufficient evidence to find that Cole possessed the handgun found under the front passenger seat in this case.

While the district court did not explicitly state that it applied the *Rosa* factors in finding that Cole possessed the gun, it did appear to rely on them in making its ruling. Specifically, the district court found that Cole possessed the gun because it was found in a car he jointly owned, it was under his seat at the time of the traffic stop, and his belongings were found near the gun. Substantial competent evidence presented at the hearing supports these findings. In applying the *Rosa* factors in this case, the evidence shows Cole was a registered owner of the car. He was riding in the passenger seat at the time Officer Schmidt pulled over the car. The gun was eventually found under Cole's seat. Cole asked Schmidt to retrieve his belongings—namely, his chewing tobacco and his tea, which were found in the front passenger seat and on the front passenger floorboard, respectively. These items were located near where the gun was found. Placement of these items also shows that Cole had some level of access or control over the passenger side of the car. These factors, when taken together, provide more than a sufficient inference of knowing possession by a preponderance of the evidence. So there is substantial competent evidence to support the district court's finding that Cole possessed the gun. Cole's argument to the contrary essentially asks us to reweigh the

10

evidence and find more credible his alternative explanation as to how the gun could have made its way under the passenger seat in which he was sitting. An appellate court does not reweigh evidence or assess the credibility of the witnesses. See *State v. Lowery*, 308 Kan. 1183, 1218, 427 P.3d 865 (2018).

*Bypassing intermediate sanctions*

Once there is evidence of a probation violation, the decision to revoke probation rests within the district court's sound discretion. However, whether the district court properly imposed a sentence after revoking a defendant's probation invokes a question of law over which an appellate court exercises unlimited review. Furthermore, to the extent that resolution of the issue requires statutory interpretation, an appellate court also exercises unlimited review. *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

Cole argues that the district court erred in revoking his probation because it failed as a matter of law to follow the proper sanctions scheme outlined in K.S.A. 2019 Supp. 22-3716(c). Before reaching the merits of Cole's arguments, we first must decide which version of K.S.A. 22-3716 applies to the claim he presents on appeal. The procedure for revoking an offender's probation is governed by K.S.A. 2019 Supp. 22-3716. That statute requires the district court to impose intermediate sanctions before it can revoke an offender's probation, but the number and type of intermediate sanctions recently has changed. See L. 2019, ch. 59, § 10. Before July 1, 2019, the district court had to impose either a 2-day or 3-day jail sanction and then a 120-day or a 180-day prison sanction before revoking a defendant's probation. See K.S.A. 2018 Supp. 22-3716(c)(1)(B)-(D). But effective July 1, 2019, the Legislature removed the 120-day and 180-day prison sanction from the intermediate sanctioning scheme. See K.S.A. 2019 Supp. 22-3716(c). Under the 2019 amendment, the district court may now revoke an offender's probation

after the offender has received at least one two-day or three-day jail sanction. See K.S.A. 2019 Supp. 22-3716(c)(1)(C).

Here, the district court relied on the 2018 version of the statute to revoke probation and impose a modified underlying sentence. But in their briefs, the parties rely on the language in the 2019 amended statute to support their arguments. Neither party explains why the amendments should apply retroactively to Cole's case. An argument not briefed is generally deemed waived and abandoned. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

The general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retrospectively or (2) the change is procedural or remedial in nature. *White v. State*, 308 Kan. 491, 499, 421 P.3d 718 (2018). Here, the 2019 amendments do not direct courts to apply the change retroactively. See K.S.A. 22-3716, as amended by L. 2019, ch. 59, § 10, effective July 1, 2019. And the amendments are not merely procedural since they remove the required 120-day and 180-day prison sanctions from the intermediate sanctioning scheme. See *State v. Bernhardt*, 304 Kan. 460, 480, 372 P.3d 1161 (2016) (explaining that "[a] merely procedural law does not 'change[] the legal consequences of acts completed before its effective date'"). For these reasons, we find the 2018 version of K.S.A. 22-3716—which was in effect when Cole committed his crimes on February 7, 2019—is applicable to the claims presented on appeal. We use the date Cole committed his crimes because it is the date of the underlying offense, not the date of the probation revocation hearing, that controls retroactivity of the 2019 amendments to K.S.A. 22-3716. See *State v. Coleman*, 311 Kan. 332, 337, 460 P.3d 828 (2020). In *Coleman*, the district court revoked the defendant's probation without exhausting the intermediate sanctions based on a statutory exception that allowed the court to do so when the probation was originally granted as a result of a dispositional departure. See K.S.A. 2017 Supp. 22-3716(c)(9)(B). Overruling prior cases to the contrary, the *Coleman* court held that the dispositional departure

12

exception at K.S.A. 2017 Supp. 22-3716(c)(9)(B) "applies only to probationers *whose offenses or crimes of conviction* occurred on or after July 1, 2017." (Emphasis added.) 311 Kan. at 337. Although *Coleman* addressed the retroactivity of a different amendment to the probation revocation statute, the same reasoning applies here.

Having determined that the 2018 version of the statute applies here, we move on to address Cole's claim of error. The district court relied on K.S.A. 2018 Supp. 22-3716(c)(9)(A), which permits the court to pass over the required intermediate sanctions when "the safety of members of the public will be jeopardized or . . . the welfare of the offender will not be served." The district court must explain the public safety or offender welfare finding "with particularity." K.S.A. 2018 Supp. 22-3716(c)(9)(A). Cole claims the court failed to make this finding with the required level of particularity.

After a violation has been established, the decision to reinstate probation or to revoke and incarcerate the probationer rests within the sound discretion of the district court. Judicial discretion is abused if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The movant bears the burden of showing such an abuse of discretion. *State v. Cameron*, 300 Kan. 384, 391, 329 P.3d 1158 (2014). Cole carries the burden of showing that the district court abused its discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

The district court may bypass the intermediate sanction scheme and immediately revoke probation in certain situations. One of these exceptions is known as the public safety bypass, which requires the court to find and set forth "with particularity the reasons" why public safety would be jeopardized in imposing an intermediate sanction. See K.S.A. 2018 Supp. 22-3716(c)(9)(A). When something must be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details. An implicit determination is not enough when a statute requires such findings. *State v. Clapp*, 308 Kan. 976, 989,

13

425 P.3d 605 (2018); see *McFeeters*, 52 Kan. App. 2d 45, Syl. ¶ 4. Furthermore, in making particularized findings, a district court cannot "simply repeat the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation when exercising their discretion to revoke the privilege of probation." *McFeeters*, 52 Kan. App. 2d at 49. In other words, a court may not make conclusory remarks about a defendant's unwillingness or inability to conform his or her behavior or a defendant's repeated failure to abide by probation terms and may not use such remarks as a sole basis for invoking the public safety bypass. See *State v. Duran*, 56 Kan. App. 2d 1268, 1275-76, 445 P.3d 761 (2019); *McFeeters*, 52 Kan. App. 2d at 49.

Cole argues that the district court failed to make the required particularized findings in this case. He relies on this court's analysis in *Duran* to support his argument. In *Duran*, a panel of this court found that a district court improperly invoked the public safety bypass in revoking a defendant's probation because it failed to set forth the requisite particularized findings. 56 Kan. App. 2d at 1275-77. The district court in *Duran* stated that the defendant was likely to continue violating his probation based on repeated behaviors, including drug usage and weapons possession. It found that the public safety would be impacted because there existed the possibility that the defendant could later possess and use weapons and then contribute to the drug economy. However, the district court's reasons for revoking the defendant's probation were unrelated to use of weapons or his commission of violent crimes. Rather, the reasons for revocation were based on the defendant's continued use of drugs. On appeal, this court found that the district court's reasoning was a series of "speculative and generalized predictions" without any explanation as to how public safety had any connection to the particular facts of the defendant's case. 56 Kan. App. 2d at 1275-76. This court recognized that if district courts are allowed to make such speculative and generalized findings, the public safety bypass would "'swallow up the graduated sanctions scheme'" and apply in any case where there is a violation based on drug usage. 56 Kan. App. 2d at 1276. This court reversed the

district court's order revoking the defendant's probation for failure to set forth particularized reasons for invoking the public safety bypass. 56 Kan. App. 2d at 1276-77.

While *Duran* is instructive here, it is factually distinguishable. The district court in this case explicitly stated it was imposing a modified prison sentence because Cole possessed a loaded handgun and had a problem with continued methamphetamine use. Possession of a loaded handgun in violation of the conditions of probation is a specific determination. The court explained how Cole was given multiple chances in this case, including a two-day quick dip for a drug use violation, a three-day quick dip for drug use violations, and a chance at inpatient treatment. The court explained that Cole continued to use drugs despite these chances and that he was kicked out of inpatient treatment for his failure to stay clean. Those are specific determinations. The court found Cole had an extensive criminal history; specifically, Cole had 19 prior convictions before he committed the underlying offenses in this case. The court found Cole's criminal history included a previous conviction for a "more serious violent offense" and a previous conviction for possession of a firearm by a felon. These are not general comments but facts specific to Cole's case. The district court determined that the circumstances of Cole's current crimes of conviction and violations of probation by using drugs and illegally possessing a firearm deem him a danger to others. The district court could have been more expansive in describing the danger Cole posed but the underlying facts were known to all of the participants, and the connection between those facts and the district court's detailed reasoning was unmistakable.

We find the district court stated with sufficient particularity its findings for bypassing any additional intermediate sanctions based on the public safety exception in K.S.A. 2018 Supp. 22-3716(c)(9)(A). The conclusion and the underlying reasoning fit within the statutory framework. The district court, therefore, did not abuse its discretion.

Affirmed.