No. 119,303
119,304

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUADALUPE J. DURAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

To bypass intermediate sanctions for violations of probation under K.S.A. 2018 Supp. 22-3716(c)(9)(A), a district court must find and set forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction.

2.

The district court's findings under K.S.A. 2018 Supp. 22-3716(c)(9)(A) that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by imposing intermediate sanctions for a probation violation are not specific enough to bypass intermediate sanctions if an appellate court must infer from the judge's findings the particularized reasons why public safety would be jeopardized or the offender's welfare would not be served.

3.

Broad generalizations about public safety and offender welfare that could easily apply to all similar cases are not sufficiently particularized to meet the requirements of K.S.A. 2018 Supp. 22-3716(c)(9)(A).

4.

Regardless of whether a judge has threatened previously to revoke a defendant's probation if there are any violations of probation, the Legislature has clearly chosen to limit the court's ability to follow through on such a threat by legislating a scheme of intermediate sanctions.

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed June 21, 2019. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.

ARNOLD-BURGER, C.J.:  If the district court finds "with particularity" that intermediate sanctions would jeopardize public safety or that the welfare of the offender will not be served by the imposition of intermediate sanctions, the district court may order the offender who has violated probation to serve his or her underlying sentence. K.S.A. 2018 Supp. 22-3716. But the court's order must state the reasons for its findings with particularity. The district court's findings are not specific enough to bypass intermediate sanctions if an appellate court must infer from the judge's findings the particularized reasons the public safety would be jeopardized or the offender's welfare would not be served. See *State v. Clapp*, 308 Kan. 976, Syl. ¶ 4, 425 P.3d 605 (2018).

Guadalupe J. Duran was sentenced in two cases on two occasions. The court offered Duran, and he accepted, probation on each case with a lengthy underlying sentence. After Duran violated his probation, the district court bypassed graduated sanctions and ordered Duran to serve his underlying sentences because the court believed

2

continued probation would jeopardize public safety and would not serve Duran's welfare. Duran appeals, arguing the district court's findings lacked the required specificity. Because the district court abused its discretion by revoking Duran's probation without setting forth with particularity the reasons for finding that the safety of members of the public would be jeopardized or that Duran's welfare would not be served by imposing an intermediate sanction, we remand the case for a new dispositional hearing.

FACTUAL AND PROCEDURAL HISTORY

In April 2016, Duran pleaded guilty to criminal possession of a weapon by a convicted felon. The weapon was a knife found during a pat-down search. The court sentenced him to 17 months in prison but released him on probation for 18 months. About a year later, the State alleged Duran violated the terms of his probation by committing new crimes. Duran pleaded guilty to the new crimes of criminal possession of a weapon by a convicted felon and possession of methamphetamine. This time the weapon was a 4-inch knife found in his car after a traffic stop.

The court held a joint probation violation hearing and sentencing hearing. The court found that Duran qualified for presumptive prison for his new convictions. His counsel requested a dispositional departure, arguing Duran wanted to go to inpatient drug treatment. He explained that Duran was "maybe uncomfortable with the idea of getting out into the community immediately without going first to some inpatient." Duran acknowledged that he failed to complete inpatient treatment in 1984 and 2016.

After listening to Duran's request the district court stated that he was going to give Duran a choice. The court informed Duran:

3

"I know what your answer's going to be before you give it to me, Mr. Duran, I just know what it is. I know ultimately what the result's going to be. But I'll give you your choice in these matters.

"If you want to choose today and admit to yourself that you'll probably fail on probation, in the [second case], I would impose a 7 month sentence on Count 1, a reduced 24 month sentence on Count 2. I would run those two counts concurrent with each other.

"I would reduce the sentence in the [first case] to 12 months. That would still be consecutive to the [second case], but that would give you an overall prison sentence of 36 months. Less jail credit, less 20 percent reduction of your sentence for good time. So that's three years at most in prison if you admit that you're probably going to fail on probation. That's your first choice.

"And I want you to visit with Mr. Smartt before you give me your answer, even though I know what your answer's going to be.

"Your second choice is I'll grant you probation, I'll make the necessary findings to do so, and I'll reinstate you in the [first] case as well, but I'll impose high number of 9 months on Count 1 and 36 months in Count 2 in the [second] case. I would run those consecutive to each other for a controlling sentence of 45 months in that case. I would leave the sentence in the [first] case to 17 months. It would still be consecutive to the [second] case. That would give you an overall controlling sentence between those two cases of 62 months, over five years in prison.

"There would be no reduction, no reinstatement, zero tolerance for any noncompliance with drug and alcohol or mental health treatment, any positive UA for any alcohol or illegal drugs, any possession of weapons. Any commission of any crime, I don't care what it is, driving while suspended all the way up to murder, no reduction, no reinstatement. You would be going to prison for the balance of 62 months upon a subsequent probation violation raising any of those issues."

Duran told the court he wanted probation. The court continued Duran's probation in the first case and granted him probation in the second with underlying sentences consistent

with what the court told Duran when offering him a choice. The court found that Duran's offenses were not crimes of violence. Finally, the district court ordered Duran to serve a 30-day jail sanction on his first case and continued him on probation. The court directed Duran to make arrangements for inpatient treatment during the 30-day period.

Duran was released from custody in early February 2018 but did not enter inpatient treatment. Just three days after his release, Duran tested positive for methamphetamine. Duran stipulated to violating his probation. Community Corrections recommended that the court order Duran to serve his underlying sentences. The State also requested that the court order Duran to serve his underlying sentences and make findings that continued probation would not be in the interest of community safety or Duran's welfare.

After hearing arguments from both parties the court said:

"If I were to reinstate your probation and I were to order you into treatment, I seriously doubt that would be any different than what happened at the January . . . probation violation hearing where I reinstated you, ordered treatment, gave you a 30 day jail sanction.

"You were released on February 2nd, 2018, and you had a positive for methamphetamine and amphetamine on February 5th of 2018. Despite your intentions, I find you're going to give way to your addiction. And that's historically the case.

"I understand your desire not to go to prison. I understand the rationalization that you justify your desire to not go to prison despite your long-term addiction. But I'm going to find that reinstatement of probation is not in your best interest, would not be in your welfare because you are likely to obtain new probation violation matters based on repeat behaviors, as you've already shown in the prior probation warrants. Drug usage, weapon possession. You have the possibility of incurring new charges. Public safety's impacted in a negative way because of the demonstrated history and the, again, possibility that you

5

would have possession and possibly use of weaponry in the future. You would certainly be fueling the drug economy, which is illegal in and of itself.

"If I were to reinstate you to probation, all I could do would be to tell you you have to abide by probation, or in the event of a probation violation warrant, I would send you to prison. That's exactly what I did on January 4, and that didn't have any benefit.

"You knew you were looking at a 62 month sentence. You knew I had imposed zero tolerance, yet you still gave into your addiction and you used. I don't see how that has changed any at this point in time.

"I'm going to make those findings I've stated that it's not—reinstatement would not be in your best interest of welfare, that public safety would be impacted in a negative way."

The court revoked Duran's sentence and ordered him to serve his underlying sentences. The journal entries noted "[r]einstatement and continued" probation would (1) not be in Duran's welfare or best interest because he continued to use drugs and obtain new charges and convictions and (2) impact public safety because he might use weapons and would continue to fuel the drug economy. Duran appeals the revocation of his probation. This court consolidated the cases for appellate purposes.

ANALYSIS

On appeal, Duran argues the district court erred by bypassing intermediate graduated sanctions and ordering him to serve his underlying sentence without making the particularized findings supporting its decision required by K.S.A. 2018 Supp. 22-3716(c)(9)(A).

*Our standard of review is abuse of discretion.*

Once a probation violation has been established, the decision to revoke probation rests within the sound discretion of the district court. *State v. McFeeters*, 52 Kan. App. 2d 45, 47, 362 P.3d 603 (2015). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

*A court may bypass intermediate sanctions under K.S.A. 2018 Supp. 22-3716 in limited circumstances.*

Generally, the district court is required to order a probation violator to serve a series of graduated intermediate sanctions before revoking probation and ordering him or her to serve the remainder of the underlying prison sentence. See K.S.A. 2018 Supp. 22-3716(c)(1). One exception to the general rule is in K.S.A. 2018 Supp. 22-3716(c)(9)(A), which allows the district court to bypass intermediate sanctions if the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." "When something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details." *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992).

This court addressed the requirement that the district court make its findings with particularity in *McFeeters*. The court explained that the district court "must explicitly address how the public's safety would be jeopardized or how the offender's welfare would not be served by the imposition of intermediate sanctions." 52 Kan. App. 2d 45, Syl. ¶ 4.

7

In *McFeeters*, the district court explained its reasoning for bypassing intermediate sanctions:

> "'My major concern is drug usage. This is a drug case; you've failed to go to treatment. You only reported from the records that I see for about two months and I don't know how many UAs you had in two months, but I would venture to say you didn't have that many. You had one that you were dirty . . . . [Y]ou stopped reporting in two months. . . . [T]here was some question in the substance abuse evaluation how accurate your recollection was with regard to your usage of drugs. I think that there was some conflicts, at least the evaluator believed that you said different things different times as to your drug usage, but definitely the recommendation was for completion of the intensive outpatient treatment program which you did not do.'" 52 Kan. App. 2d at 47.

This court held that the district court's comments "simply repeat[ed] the type of reasoning historically relied upon by sentencing courts in discussing amenability to probation when exercising their discretion to revoke the privilege of probation." 52 Kan. App. 2d at 49. The district court's "conclusory remarks about McFeeters' apparent unwillingness or inability to conform his behavior" failed to explain "*how* members of the public would be jeopardized if McFeeters remained on probation or *how* McFeeters' welfare would not be served by imposition of the intermediate sanctions." 52 Kan. App. 2d at 49.

The Kansas Supreme Court relied on *McFeeters* in *Clapp*, 308 Kan. 976, Syl. ¶ 4, to hold "[t]he particularity requirement . . . is not met when an appellate court must imply the district court's reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by the bypassed intermediate sanction." The facts outlined in *Clapp* are like the facts in many probation cases. The State accused Clapp of violating his probation and Clapp stipulated to the violation. The district court found that Clapp did not commit a new crime or abscond from probation and that Clapp had a job and was in drug treatment. But the court revoked

Clapp's probation, bypassing intermediate sanctions solely because, after reciting Clapp's criminal history, the court felt that Clapp did not value how probation could help him change his life. And like this court in *McFeeters*, the Kansas Supreme Court held the district court's reasoning for bypassing intermediate sanctions was inadequate. 308 Kan. at 988-91.

In *State v. Dooley*, 308 Kan. 641, 653-54, 423 P.3d 469 (2018), decided just one month before *Clapp*, the Supreme Court noted that under the scheme in effect before the adoption of a process of graduated sanctions, a violation of probation in the face of unfettered judicial discretion often meant the more likely outcome was revocation and prison. The court suggested the judge's statement that "'[t]his is a serious violation and you've been on probation before, you knew what was required of you, you were given several chances'" was reminiscent of the prior scheme, not the current one. 308 Kan. at 653-54.

Since *Clapp* several panels of this court have reached similar results under similar facts—finding the judge failed to state with enough particularity the risk to the defendant's welfare or the public safety to justify bypassing intermediate sanctions. See *State v. Collins*, No. 117,116, 2019 WL 986315, at *4-5 (Kan. App. 2019) (unpublished opinion) ("[Y]our inability or unwillingness to abide by terms and conditions of probation are a public safety concern. You're obtaining meth from somewhere. . . . [T]hat fuels an illegal subculture. Drug deals obviously invoke safety concerns. . . . [Y]ou will again offend and pick up new charges, get another sentence."), *petition for rev. filed* March 29, 2019; *State v. Shanholts*, No. 118,911, 2019 WL 1303165, at *4-5 (Kan. App. 2019) (unpublished opinion) ("'I'll also find that the welfare of the defendant would not be served by continuing probation. It doesn't serve anybody any good to continue a probation that she's not going to follow. So I'll make that specific finding.'"), *petition for rev. filed* April 22, 2019. But see *State v. Campbell*, No. 119,077, 2019 WL 1499168, at *3-4 (Kan. App. 2019) (unpublished opinion) (finding sufficient evidence to support

district court's finding that Campbell's welfare would not be served by imposition of intermediate sanctions), *petition for rev. filed* May 2, 2019; *State v. Loving*, No. 119,851, 2019 WL 1746741, at *2 (Kan. App. 2019) (unpublished opinion) (same).

The Kansas Supreme Court made clear in *Clapp* that since 2013 we have a new probation scheme in Kansas. 308 Kan. at 988-90. That scheme requires more than a generalized finding that the defendant is not amenable to probation to bypass mandatory intermediate sanctions. A district court's finding under K.S.A. 2018 Supp. 22-3716(c)(9)(A) that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by imposing intermediate sanctions for a probation violation is not specific enough to bypass intermediate sanctions if an appellate court must infer from the judge's finding the particularized reasons why public safety would be jeopardized or the offender's welfare would not be served.

Here the district court said Duran was "likely to obtain new probation violation matters based on repeat behaviors" including "[d]rug usage [and] weapon possession" which could lead to new charges. It should be noted that the reason for his probation revocation was not new charges, it was the continued use of drugs. The district court also found that public safety would be impacted because there was a possibility Duran could possess and use weaponry in the future and that he would be contributing to the drug economy. But the court found that Duran's offenses were not crimes of violence. And the reason for the revocation was unrelated to the use of weapons or any crimes of violence. In fact, he had not used a weapon in his underlying crimes, he was just found with knives in his possession. So both of these findings were based on nothing more than general supposition.

Findings that a defendant has repeatedly failed to complete treatment and therefore will likely continue to do so, leading to the possession of weapons, which will lead to the commission of more crimes and which will undoubtedly fuel the drug economy, is an

10

approach that relies on a series of speculative and generalized predictions without explaining their connections to the particular facts of Duran's case. It is nothing more than saying "you messed up, you will probably keep messing up, so you are not amenable to probation." We agree with Duran's statement in his appellate brief that "if courts are allowed to make an offender welfare finding based on the likelihood that a person addicted to drugs is going to relapse, then (c)(9) would swallow up the graduated sanctions system." Likewise, if courts can make an offender welfare finding because a person might violate his or her probation again, the exception will swallow the rule. And if courts can base their public safety findings on such generalized conclusions that a defendant's continued drug usage fuels the drug economy, all probation revocations for drug usage could result in such a finding and the bypassing of intermediate sanctions. As previously noted, "[w]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details." *Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2 (cited with approval in *Clapp*, 308 Kan. at 989-90). Broad generalizations that equally could apply to all similar cases are not sufficiently particularized to meet the requirements of K.S.A. 2018 Supp. 22-3716(c)(9)(A).

We also pause to note that at his sentencing hearing, the district court judge made it very clear that he was going to have "zero tolerance" for any violations of probation. Such a statement is understandably meant to incentivize compliance with probation, but it is not a justification for bypassing the statutorily mandated intermediate sanctions scheme for subsequent violations of probation. "Regardless of whether a judge has threatened previously to revoke a defendant's probation if there are any violations, the legislature has clearly chosen to limit the court's ability to follow through on such a threat" by legislating a scheme of intermediate sanctions. *State v. Jackson*, No. 113,654, 2016 WL 2609638, at *2 (Kan. App. 2016) (unpublished opinion). Accordingly, it should be reserved for those situations when a district judge has imposed all mandatory intermediate sanctions

11

and *could have* revoked the defendant's probation, but didn't. It is at that point that the judge has full discretion to enforce a zero tolerance policy.

In sum, based on this court's prior decisions and the guidance our Supreme Court has provided in *Clapp*, we find the district court's statements here were not particularized enough to bypass intermediate sanctions on the basis of a threat to public safety or offender welfare. Because the district court abused its discretion by revoking Duran's probation without setting forth with particularity the reasons for finding that the safety of members of the public would be jeopardized or that the welfare of the offender would not be served by imposing an intermediate sanction, we remand the case for a new dispositional hearing.

*We cannot affirm the district court for a discretionary decision the court did not make.*

The State argues this court can affirm the district court, at least in part, on other grounds because Duran's probation sentence in the second case stemmed from a dispositional departure. Under K.S.A. 2018 Supp. 22-3716(c)(9)(B), the district court *may* bypass graduated sanctions if the original probation sentence was the result of a dispositional departure. But this court cannot rely on K.S.A. 2018 Supp. 22-3716(c)(9)(B) when the district court did not invoke it while revoking the defendant's probation. In other words, we cannot affirm the district court for a discretionary decision it did not make. The district court is free to take up this provision on remand.

Reversed and remanded with directions.

12