NOT DESIGNATED FOR PUBLICATION

Nos. 119,420
119,421

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN MICHAEL SNELLINGS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed September 13, 2019. Reversed and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Nicholas Campbell*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.


PER CURIAM:  After Kevin Snellings violated the terms of his probation on multiple occasions in 2017 and 2018, the district court concluded that Snellings was not "amenable to probation," revoked Snellings' probation, and ordered him to serve the underlying sentence for his convictions. At the time of Snellings' probation violations and dispositional hearing, Kansas law required that probation violations carry a presumptive intermediate sanction of 120 to 180 days in prison, followed by reinstitution of probation. See K.S.A. 2017 Supp. 22-3716(c)(1)(C) and (D). Under the circumstances in this case, a

1

district court was only permitted to depart from such an intermediate sanction if the court stated "with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served" by a 120- or 180-day prison term. K.S.A. 2017 Supp. 22-3716(c)(9)(A).

On appeal, Snellings argues that the district court in this case failed to make the particularized findings required by K.S.A. 2017 Supp. 22-3716(c)(9)(A). We agree. The district court's analysis concerned Snellings' amenability to *probation*, not whether his welfare would be served by imposing *the intermediate sanction*. We therefore reverse the district court's order requiring Snellings to serve his underlying prison sentence and remand for a new dispositional hearing to assess the fitness of an intermediate sanction in compliance with the statute.

FACTUAL AND PROCEDURAL HISTORY

In 2015 and 2016, Snellings pleaded guilty to possessing methamphetamine, a severity level 5 drug felony, and burglary, a severity level 9 felony. Snellings' two cases were consolidated for purposes of sentencing in June 2016. Consistent with the terms of the plea agreements, the district court ordered Snellings to 18 months of probation, with respective underlying prison terms for his two convictions of 32 months and 13 months—the aggravated durations in the applicable boxes under the sentencing guidelines—to run consecutively.

In the first six months of 2017, the State filed two motions seeking revocation of Snellings' probation:

- In January 2017, the State alleged Snellings had violated the terms of his probation by being unsuccessfully discharged from drug treatment after failing a drug test; not reporting to his probation officer; not reporting for mandatory drug testing;

2

failing to pay outstanding court costs; and failing to complete court-ordered community service hours. At a February 2017 hearing, Snellings stipulated to the violations and was sentenced to an eight-day "quick dip" under K.S.A. 2017 Supp. 22-3716(c)(1)(B). Probation was extended 12 months from the date of violation.

- In May 2017, the State alleged Snellings had violated the terms of his probation by absconding from probation supervision; not reporting to his probation officer; not complying with drug treatment requirements; failing to pay outstanding court costs; and failing to provide community corrections with a contact number or address. At a June 2017 hearing, Snellings stipulated to these violations and was sanctioned to a 30-day jail term under K.S.A. 2017 Supp. 22-3716(c)(11). Probation was again extended 12 months from the date of the hearing.

In September 2017, the State filed the motion for probation revocation that is the subject of this appeal. In its third revocation motion, the State again alleged that Snellings had been unsuccessfully discharged from drug treatment after failing to attend his appointments. The State also asserted that Snellings had failed to report to his probation officer; had not reported for mandatory drug testing; had not paid outstanding court costs; and had failed to complete court-ordered community service.

At the hearing on the State's motion in March 2018, Snellings provided an explanation of his actions but admitted the alleged violations. He argued that the appropriate remedy in this case was an intermediate prison sanction of up to 180 days under K.S.A. 2017 Supp. 22-3716(c)(1) instead of total revocation, with the understanding that he would return to supervised probation upon completion of that intermediate sanction. The State, however, asked the court to revoke Snellings' probation outright instead of a "tier two" sanction of 120 or 180 days in prison:

"[PROSECUTOR]: . . . Based upon these litany [*sic*] of violations, the fact that this is the third time we're here, we'd ask the court to make the findings that the defendant is not amenable to probation and would ask for revocation to his original sentence.

"THE COURT: So you're saying that's the jump from a tier one and other—I think he did a 30-day shock time—excuse me—but because of that, you think a tier two is not necessary?

"[PROSECUTOR]: Your Honor, based upon again the history of this case, we just don't believe that probation is amenable. He has continued to refuse to engage in treatment. And under the statute as allowed, if the court makes the specific findings he's not amenable to probation, then [it] can revoke. And again, these violations are happening over and over again. This is the third time we're here. We don't believe giving a tier two is going to make him automatically start doing probation so we'd ask for revocation."

The district court granted the State's motion and ordered Snellings to serve his underlying prison sentence in both cases for a controlling prison term of 45 months. The court explained its reasoning, focusing on Snellings' repeated failure to comply with the terms of his probation and, in particular, his failure to complete drug treatment:

"I have a hard time coming up with any plausible excuse or—no, that's not the right word—justification for continuing this matter. And by this—by continuing, I mean 150, 180 days, gets out, comes back, doesn't do what he's supposed to.

"This case has a complete history of noncompliance. Since sentencing, we have had four—excuse me—three bench warrants, two revocations, one I did a 30-day shock time over the objection of the State. That didn't work. . . . I have to concur completely with the argument of the State that Mr. Snellings has shown that he is not amenable to probation. Every opportunity has been given he has not followed through with. I have stressed the importance of certain requirements, drug treatment, et cetera. That has not been followed. There's at least twice he's left—well, maybe only once—left treatment. I say twice because I wrote on the two docket sheets. So I don't know what other things I could say or do. I've been trying since June of 2016 when I talked to him about how important drug treatment was and yet nothing has occurred.

"I concur with the arguments of the State, order that probation in both cases be revoked and he serve his underlying sentence."

4

In the journal entries from the hearing, the court invoked the "bypass" provision in K.S.A. 2017 Supp. 22-3716(c)(9)(A), summarily stating Snellings' welfare would not be served by imposing further intermediate sanctions. This appeal followed.

## DISCUSSION

*The district court did not state with particularity why Snellings' welfare would not be served by the intermediate sanction as required by K.S.A. 2017 Supp. 22-3716(c)(9)(A).*

Snellings admitted to violating various terms of his probation each time the State brought the matter before the trial court, including those enumerated in the motion that led to the instant appeal. Thus, the sole issue in this appeal concerns the district court's analysis of the consequences of those violations—specifically, whether the district court complied with K.S.A. 2017 Supp. 22-3716(c)(9) when it revoked Snellings' probation and ordered him to serve his underlying prison sentence instead of the presumptive intermediate sanction under K.S.A. 2017 Supp. 22-3716(c)(1)(C) or (D).

In cases where the appellant admits to a probation violation, the decision whether to revoke probation "rests within the sound discretion of the district court." *State v. McFeeters*, 52 Kan. App. 2d 45, 47, 362 P.3d 603 (2015). The degree of discretion a district court may exercise, however, varies based on the contours of the question before it. For example, a district court does not have discretion to commit an error of law or disregard statutory limitations or legal standards. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015); *State v. Ardry*, 295 Kan. 733, 736, 286 P.3d 207 (2012). Thus, whether the court's revocation of probation is consistent with K.S.A. 2017 Supp. 22-3716(c)(9) is a question of law over which an appellate court exercises unlimited review. *McFeeters*, 52 Kan. App. 2d at 47-48. And our review is similarly unlimited "to the extent that resolution of this issue requires statutory interpretation." 52 Kan. App. 2d at 48.

5

Historically, Kansas district courts exercised broad discretion in determining the appropriate action when faced with a probation violation. *State v. Clapp*, 308 Kan. 976, 990, 425 P.3d 605 (2018). In 2013, however, the Kansas Legislature amended the statute governing probation revocations to limit the court's previous latitude. 308 Kan. at 982-84.

The framework in place at the time of this case is found in K.S.A. 2017 Supp. 22-3716(c)(1)(B) through (E). These statutory sections were discussed by our Supreme Court at length in *Clapp*, 308 Kan. at 982-85, and establish a series of graduated sanctions—ranging from modifying probation conditions to intermediate sanctions of 120 to 180 days in prison to the underlying prison sentence—that a district court must consider before revoking probation outright.

The probation revocation statute also provides various avenues for a court to depart from this graduated framework. See K.S.A. 2017 Supp. 22-3716(c)(1)(E), (c)(8), and (c)(9). The district court in this case relied K.S.A. 2017 Supp. 22-3716(c)(9):

> "The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) if:
>
> (A) The court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction; or
>
> (B) the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction was originally granted as the result of a dispositional departure granted by the sentencing court pursuant to K.S.A. 2017 Supp. 21-6815, and amendments thereto."

K.S.A. 2017 Supp. 22-3716(c)(9)(B) does not apply here, as Snellings' underlying sentence was not the result of a dispositional departure. Thus, the only avenue for the

district court to circumvent the graduated sanctions in K.S.A. 2017 Supp. 22-3716(c)(1)(C) or (D) was to "find[] and set[] forth *with particularity* the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served *by such sanction*." (Emphases added.) K.S.A. 2017 Supp. 22-3716(c)(9)(A).

Under the plain language of K.S.A. 22-3716(c)(9)(A), a district court's particularized findings must explicitly state why the public's safety would be jeopardized or how the offender's welfare would not be served *by the intermediate sanction*—not by probation generally. See *State v. Duran*, 56 Kan. App. 2d 1268, 1274-76, 445 P.3d 761 (2019); *McFeeters*, 52 Kan. App. 2d at 49. Findings are sufficiently particularized when they are "'distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018) (quoting *State v. Miller*, 32 Kan. App. 1099, 1102, 95 P.3d 127 [2004]).

Although the district court's journal entries in each of Snellings' cases state that Snellings' welfare would not be served by imposing further intermediate sanctions, they provide no explanation for that conclusion. We cannot look for implicit findings in the district court's general conclusions; the particularity requirement of K.S.A. 2017 Supp. 22-3716(c)(9)(A) "is not met when an appellate court must imply the district court's reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by the bypassed intermediate sanction." *Clapp*, 308 Kan. 976, Syl. ¶ 4. Likewise, the district court's statements during the hearing focused on whether Snellings was "amenable to probation," not whether his welfare would be served (e.g., his conduct would be improved) by an intermediate sanction of 120 or 180 days in prison. In short, the district court's analysis in this case does not satisfy the particularity requirement of K.S.A. 2017 Supp. 22-3716(c)(9)(A).

7

We understand the district court's frustration with Snellings' repeated failure to complete the drug treatment that was required as part of his probation, especially after the court's repeated colloquies at sentencing and at each subsequent hearing on Snellings' probation violations regarding the critical importance of the drug-treatment requirement. But merely reciting the defendant's history of probational noncompliance—as the district court did here—does not comply with K.S.A. 2017 Supp. 22-3716(c)(9)(A). See *Clapp*, 308 Kan. at 988-90; *Duran*, 56 Kan. App. 2d at 1274-77. Instead, the district court was required to analyze the impact of the presumptive intermediate sanction, not probation generally, on public safety or Snellings' welfare. It did not do so.

The district court's discretion in considering the State's probation revocation in this case was controlled by the language of K.S.A. 2017 Supp. 22-3716; failing to make particularized findings as to the effect of the applicable intermediate sanction constitutes an abuse of that discretion requiring reversal. *Clapp*, 308 Kan. at 991; *Duran*, 56 Kan. App. 2d at 1276-77. We therefore reverse the district court's revocation of Snellings' probation and remand for a new dispositional hearing in compliance with K.S.A. 2017 Supp. 22-3716(c). Because Snellings admitted to the underlying probation violations and the parties agree that Snellings has not previously been subject to a 120- or 180-day sanction, the sole question on remand will be whether the court should impose the presumptive intermediate sanction or whether the court will "find[] and set[] forth *with particularity* the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served *by such sanction*." (Emphases added.) K.S.A. 2017 Supp. 22-3716(c)(9)(A).

Reversed and remanded with directions.