NOT DESIGNATED FOR PUBLICATION

Nos. 123,979
123,980
123,981

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM RITZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Harvey District Court; JOHN B. KLENDA, judge. Opinion filed September 2, 2022.
Reversed and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., ISHERWOOD and COBLE, JJ.


PER CURIAM: William Ritz appeals the trial court's decision to revoke his probation. In a previous appeal, this court remanded after holding that the trial court incorrectly skipped over intermediate sanctions based on a dispositional departure. On remand, the trial court again revoked Ritz' probation, citing concerns about public safety and Ritz' welfare. Ritz argues that the trial court again erred in revoking his probation because the trial court's findings were vague, inarticulate, and based on supposition. We conclude that the trial court failed to set forth with particularity its reasons for invoking the exceptions under K.S.A. 2016 Supp. 22-3716(c)(9) before ordering Ritz to serve his

1

prison sentence. We reverse the trial court's revocation decision and remand with directions to conduct a new dispositional hearing.

FACTS

This case is Ritz' second appeal of a probation revocation. This court has already laid out the underlying facts in *State v. Ritz*, No. 122,071, 2021 WL 302413 (Kan. App. 2021) (unpublished opinion).

> "After reaching an agreement with the State, Ritz pled guilty in three Harvey County cases. In 17CR84, Ritz pled guilty to distribution or possession with intent to distribute methamphetamine within 1,000 feet of a school and use of a communication facility for a drug transaction. Then, in both 17CR85 and 17CR86, Ritz pled guilty to distribution or possession with intent to distribute methamphetamine within 1,000 feet of a school and use of a communication facility for a drug transaction, a severity level eight nonperson felony. All of these crimes were committed in January 2017.
>
> "In their plea agreement, the State agreed not to file charges in another case, and not to oppose Ritz' motion for a dispositional departure to probation in each case. Indeed, Ritz was subject to a presumptive prison sentence in each case. But the district court granted him a dispositional departure to 36 months' probation in all three cases. He received prison terms of 119 months in 17CR84 and 67 months in 17CR85 and 17CR86." 2021 WL 302413, at *1.

At a probation revocation hearing, Ritz did not contest the State's allegations that he tested positive for methamphetamine use, failed to attend appointments, and lied about his employment. The trial court revoked Ritz' probation, explaining that it had granted a dispositional departure. K.S.A. 2017 Supp. 22-3716(c)(9)(B) allowed trial courts to revoke probation without intermediate sanctions if probation was originally granted as a dispositional departure. On appeal, this court held that the trial court could not bypass intermediate sanctions and revoke probation based on a dispositional departure. This court held that the trial court erred in relying on K.S.A. 2017 Supp. 22-3716(c)(9)(B).

2

This change to the intermediate sanction scheme came into effect after Ritz committed his crimes of conviction, so the trial court erred in relying on a dispositional departure as a basis to revoke probation. 2021 WL 302413, at *2. This court remanded for a new probation violation hearing.

On remand, the trial court again revoked Ritz' probation. The court then ordered Ritz to serve a 253-month prison sentence.

Ritz timely appeals.

ANALYSIS

*Did the trial court make the required particularized findings necessary to revoke Ritz' probation?*

Ritz argues that the trial court's decision on remand should be reversed because its findings were insufficient to meet the particularity requirement of K.S.A. 2016 Supp. 22-3716(c)(9). The State asserts that the trial court made sufficient findings to justify revocation. Because the trial court relied on broad-brush generalizations, we reverse and remand with directions.

While the State must prove a violation by a preponderance of the evidence, once established, the court may revoke probation in its discretion. *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006); see *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). But see K.S.A. 2016 Supp. 22-3716 (requiring graduated sanctions before revocation in certain circumstances).

Once a probation violation and an exception to the intermediate sanctions' requirement are established, the trial court has discretion in determining whether to

3

continue the probation or to revoke and require the defendant to serve the underlying prison sentence. See *State v. Brown*, 51 Kan. App. 2d 876, 879-80, 357 P.3d 296 (2015).

A trial court's decision to revoke the defendant's probation and order the defendant to serve the underlying sentence must be exercised within the statutory framework of K.S.A. 2016 Supp. 22-3716 in this case. A trial court abuses its discretion when it steps outside the framework or fails to properly consider statutory standards. See *State v. Grossman*, 45 Kan. App. 2d 420, 427, 248 P.3d 776 (2011).

Our standard of review is the following: "Where the issue is the propriety of the sanction imposed by the trial court for a probationer's violation of the terms and conditions of probation, the standard of review is an abuse of discretion. [Citation omitted.]" *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020).

Before July 1, 2013, a trial court had broad discretion to impose a variety of sanctions once it determined a defendant violated the terms of probation. But effective July 1, 2013, the Legislature substantially amended K.S.A. 22-3716 and eliminated much of that discretion. See *State v. Clapp*, 308 Kan. 976, 981-82, 425 P.3d 605 (2018). From its enactment in 2013, the first sanction available to a trial court after a probationer violated the terms of probation—other than modifying conditions of probation—was a two- or three-day jail sanction. See K.S.A. 2016 Supp. 22-3716(c)(1)(B). After at least one jail sanction was imposed and another probation violation occurred, the trial court could impose a sanction of 120 or 180 days in prison. K.S.A. 2016 Supp. 22-3716(c)(1)(C)-(D). And unless certain bypass exceptions applied, only after a trial court imposed a 120- or 180-day prison sanction and a probationer committed another violation could the trial court order the probationer to serve the underlying prison sentence. K.S.A. 2016 Supp. 22-3716(c)(1)(E). But effective July 1, 2019, the Legislature removed the 120-day and 180-day prison sanctions from the intermediate sanctioning scheme. See K.S.A. 2019 Supp. 22-3716(c). Thus, under the 2019 amendment, the trial court may now

4

revoke an offender's probation after the offender has received at least one two- or three-day jail sanction. See K.S.A. 2019 Supp. 22-3716(c)(1)(C).

If a trial court relies on K.S.A. 2016 Supp. 22-3716(c)(9) to bypass intermediate sanctions, it must make findings that the safety of the public will be jeopardized, or the welfare of the offender will not be served by imposing sanctions. These findings must be "'distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018).

Because K.S.A. 2016 Supp. 22-3716(c)(9) requires the court to set forth with particularity the reason for finding this exception applies, "'an implicit determination is not enough.'" 308 Kan. at 652. To rely on this exception, the trial court must explain how the safety of the members of the public will be jeopardized if the offender remains on probation or how the offender's welfare will not be served by imposition of an intermediate sanction. *State v. McFeeters*, 52 Kan. App. 2d 45, 49, 362 P.3d 603 (2015); see *Clapp*, 308 Kan. at 990-91; *State v. Duran*, 56 Kan. App. 2d 1268, 1276, 445 P.3d 761 (2019) ("Broad generalizations that equally could apply to all similar cases are not sufficiently particularized" to meet the requirements of K.S.A. 2018 Supp. 22-3716[c][9]).

In *Duran*, this court held that the trial court's findings were insufficiently particular to satisfy the public safety and offender welfare exception to the intermediate sentencing scheme. This court agreed with Duran's argument that findings based on the likelihood that a person addicted to drugs is going to relapse are not appropriate findings because they are so common and generalized that they would allow trial courts to bypass intermediate sanctions in every case. The exception in subsection (c)(9) would swallow the rule of the graduated sanctions system. 56 Kan. App. 2d at 1276.

Ritz and the State both quote the findings that the trial court made in this case:

"Well, Mr. Ritz, the Court is very concerned. Looking back on the motion to revoke probation, first of all, and this is a public safety issue here. You are convicted on three separate cases of distribution of methamphetamine within 1,000 feet of a school, and that's very concerning obviously.

"I do note that the—your probation officer imposed three three-day jail sanctions, and that evidently didn't work. You continued to violate probation.

"The unsanctioned violations, you continued to use meth or tested positive for methamphetamine on numerous occasions. I note that you were dishonest with your probation officer. You indicated that you were evidently going to be working at Agco or had some association with Agco and they indicated they had no record of you ever being an employee.

"You also failed to continue your treatment program with Mirror, and you also failed to show on appointment with your probation officer.

"So, based upon that, the Court does find that your probation should be revoked.

"The Court—you are definitely a safety issue to the general public because evidently you have continued to use methamphetamine in spite of the fact that the Court had granted you a dispositional departure, and I'm not even considering that as a reason to revoke your probation, but you did commit very serious offenses by distributing methamphetamine within 1,000 feet of a school.

"And it also appears that you—your welfare just cannot be served by having any continued sanctions based upon your admissions or plea of no contest to your violations as set out, as I reviewed, with your motion to revoke probation.

"So the Court is going to remand you back to the Department of Corrections to serve your underlying sentence less credit for time served."

Just as in *Duran*, the trial court's language here referenced continued drug use as a reason for imposing the original sentence instead of an intermediate sanction. But the trial court fails to make explicit findings on *how* Ritz' admitted probation violations would mean that imposing a more severe sanction, rather than revocation, would threaten Ritz' welfare or create a public safety issue. See *McFeeters*, 52 Kan. App. 2d at 49.

As an example, the trial court provided us with no explicit findings on public safety at all. The only public safety concern expressed by the trial court was Ritz' underlying crimes of illegally distributing methamphetamine, which is not a valid basis for revoking probation. *State v. Shanholts*, No. 118,911, 2019 WL 1303165, at *4 (Kan. App. 2019) (unpublished opinion) (citing *Clapp*, 308 Kan. at 988-91) (holding that a trial court does not meet the particularity requirements by summarizing the defendant's criminal history, listing violations, and not successfully participating in court-ordered programs).

Also, the trial judge seemed conscious of the fact that Ritz' continued use of methamphetamine is not a public safety issue and is not a basis for skipping sanctions when he said, "I'm not even considering that as a reason to revoke your probation." Nevertheless, immediately after making this statement, the trial judge concluded his sentence by referring to the offenses that Ritz had previously committed:  "[B]ut you did commit very serious offenses by distributing methamphetamine within 1,000 feet of a school." And the trial court stated no other public safety concerns. Thus, if we were to uphold the trial court's public safety determination, it would require us to allow what the *McFeeters* court prohibited—a trial court *does not* meet the particularity requirements by simply discussing a defendant's unwillingness or inability to conform his or her behavior to the requirements of probation. *McFeeters*, 52 Kan. App. 2d at 49.

The trial court's conclusion about Ritz' welfare could not be served by imposing any continued sanctions—based upon his admissions of probation violations—runs counter to reason. Indeed, it seems that the Kansas Legislature adopted the intermediate sanctioning scheme to slow down the increasing prison population. Nevertheless, the trial court stated that a 120-day or 180-day sanction would be fruitless because Ritz had violated his probation, but it did not describe how or why such sanctions could not influence Ritz' welfare. We note that the trial court maintained that the three-day jail sanctions imposed by the probation officer did not work. This leaves us with a

conundrum. It boils down to this question: Why would probationers faced with a 21-year prison sentence not carefully weigh their options between serving a 120-day or a 180-day intermediate sanction and then follow their conditions of probation against serving a 21-year prison sentence for failing to follow their conditions of probation after serving a 120-day or a 180-day intermediate sanction? The trial court's reasoning here is so brief and incomplete that it affords no sound basis for us to conclude that a longer intermediate sanction would have had no effect on Ritz' behavior after serving a 120-day or a 180-day intermediate sanction.

In conclusion, the trial court here made no particular or detailed findings explaining how or why Ritz' criminal history or his relapses on probation would have posed any public safety concerns or threatened Ritz' welfare if the trial court had imposed a longer intermediate sanction. As a result, the trial court's findings are unsupported factually and legally. Indeed, the trial court's broad-brush generalizations that were made here have been previously rejected in our *Duran* holding. Thus, we conclude that the trial court abused its discretion when it revoked Ritz' probation because it failed to meet the particularity requirement under K.S.A. 2016 Supp. 22-3716(c)(9).

For the preceding reasons, we reverse the trial court's decision to revoke Ritz' probation and remand for a new dispositional hearing consistent with K.S.A. 2016 Supp. 22-3716.

Reversed and remanded with directions.

8