NOT DESIGNATED FOR PUBLICATION

No. 125,790

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL E. EGBERT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed May 3, 2024. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.

PER CURIAM: Michael Egbert appeals the district court's decision to revoke his probation and impose his underlying 31-month prison sentence. He argues that the district court abused its discretion when it revoked his probation without complying with the statute governing probation revocation, K.S.A. 2015 Supp. 22-3716. After reviewing the parties' arguments and the record, we agree with Egbert that the court did not make the particularized findings necessary to revoke his probation. We thus reverse the revocation of Egbert's probation and remand for a new dispositional hearing.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2017, Egbert pleaded guilty to burglary and theft for crimes committed in November 2015. The district court imposed a controlling 31-month prison sentence for these crimes; it then suspended this sentence and ordered Egbert to serve 24 months' probation. Egbert violated the conditions of his probation on multiple occasions.

In February 2019, Egbert stipulated to violating the terms of his probation by using methamphetamine on two occasions, and he consented to serve a 48-hour intermediate sanction.

A few weeks later, in March 2019, the State moved to revoke Egbert's probation, alleging he had not complied with several terms of his probation. Egbert was arrested but later released pending the hearing on the State's allegations. Egbert continued to have difficulty adhering to the conditions of his release while awaiting that hearing:

- In June 2019, the State again moved to revoke Egbert's probation, asserting he had committed multiple crimes and had not reported the incident giving rise to these offenses to his intensive supervision officer. Egbert was again arrested and then released, pending a hearing.

- In July 2019, Egbert tested positive for methamphetamine; he also failed to report to his intensive supervision officer three times.

- In October 2021, Egbert was arrested for driving with a suspended license.

- In December 2021, Egbert tested positive for methamphetamine and failed to appear at a hearing about the various probation violations the State had previously alleged.

- In January 2022, Egbert was arrested for interference with a law enforcement officer, fleeing and eluding, and driving while suspended.

In July 2022, the court held a new hearing on the probation violations the State alleged in its March 2019 and June 2019 motions. The district court found that Egbert had violated the terms of his probation by failing to show proof of new drug and alcohol evaluation; failing to show proof of employment and income; and failing to report twice. Egbert does not dispute these findings on appeal.

In October 2022, the district court held a hearing to determine the appropriate disposition for Egbert's probation violations. The State requested that the district court revoke Egbert's probation and impose his underlying prison sentence. But to do this, the State noted that the court "would have to make safety welfare findings" under K.S.A. 2015 Supp. 22-3716(c)(9). To that end, the State reminded the court that "there have been several other bond violation failures to appear" and that there was a "new offense that was committed, the flee and elude in the 20 CR case that's still floating around out there."

Egbert requested that the court reinstate his probation, noting that he had "participated in every available jail program that he possibly [could]," including attending AA meetings, parenting classes, and a men's fellowship, as well as working towards his GED. He also emphasized that he had "a lot of resources in the community"—he had a supportive family, had been employed, and could obtain employment within days of being released. Egbert informed the court that he would not be "without tools and resources" if his probation was reinstated.

The district court denied Egbert's request, revoked his probation, and ordered him to serve his underlying prison sentence. In announcing its decision, the court generally referenced Egbert's criminal history, noting he was originally granted probation through a

dispositional departure. The court noted that Egbert had violated the conditions of his probation several times and had failed to appear at multiple hearings. The district court then stated it was "making public safety and welfare findings at this point in time, public safety and that the community will be at risk as well as reinstatement would not be beneficial to both the community and for you, Mr. Egbert."

## DISCUSSION

The sole issue in this appeal is whether the district court complied with Kansas law when it revoked Egbert's probation and ordered him to serve his underlying prison sentence without first imposing an intermediate sanction.

Once a probation violation is established, the decision to revoke probation "rests within the sound discretion of the district court." *State v. McFeeters*, 52 Kan. App. 2d 45, 47, 362 P.3d 603 (2015). The degree of discretion a district court may exercise varies based on the nature of the question before it. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). While a district court has broad discretion, for example, to determine whether someone should remain on probation after they have committed a new crime, it has no discretion to disregard statutory limitations or legal standards. A district court abuses its discretion when it veers outside the statutory framework governing the consequences of probation violations. See *McFeeters*, 52 Kan. App. at 47-48. Whether a district court's decision adhered to this framework is a legal question over which our review is unlimited. 52 Kan. App. at 47-48.

This statutory framework has changed over time. Historically, Kansas district courts exercised broad discretion in determining the appropriate action when faced with a probation violation. *State v. Clapp*, 308 Kan. 976, 990, 425 P.3d 605 (2018). But since 2013, the Kansas Legislature has constrained the district courts' discretion in probation revocations. 308 Kan. at 982-84. From 2013 until 2019, the legislature required district

4

courts to impose a series of intermediate sanctions—first a 2- or 3-day jail sanction and then a 120- or 180-day prison sanction—before probation could be revoked in most cases. See, e.g., K.S.A. 2015 Supp. 22-3716(c)(1) (outlining this framework). The statute also contained bypass exceptions that allowed a district court to revoke a defendant's probation without having previously imposed an intermediate sanction in certain circumstances. K.S.A. 2015 Supp. 22-3716(c)(8)-(9).

The parties agree that the only way the district court could have bypassed intermediate sanctions and imposed Egbert's underlying prison sentence based on the violations contained in the State's March 2019 motion was through K.S.A. 2015 Supp. 22-3716(c)(9). District courts may use that bypass exception if the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2015 Supp. 22-3716(c)(9).

Findings are sufficiently particularized when they are "'distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018). A district court's findings are not sufficiently particularized if an appellate court must infer the district court's rationale from its conclusion. Instead, a district court's particularized findings must explicitly state why the public's safety would be jeopardized or how the offender's welfare would not be served *by the intermediate sanction*—not by probation generally. See *State v. Duran*, 56 Kan. App. 2d 1268, 1274-76, 445 P.3d 761 (2019), *rev. denied* 312 Kan. 895 (2020).

Our review of the record reveals a lack of particularized findings about public safety or Egbert's welfare for the district court to have properly bypassed the intermediate sanctioning scheme and revoked Egbert's probation. Instead, as Egbert notes, the court merely summarized some of the facts and then invoked the statutory language of K.S.A.

2015 Supp. 22-3716(c)(9). It did not explain the connection between the various factors the court referenced and how those factors would jeopardize public safety or harm Egbert's welfare if the court were to impose an intermediate sanction.

In its brief, the State argues that the court's findings were sufficiently particularized because the court tied its decision to specific factors "based on a review of this defendant's behavior and track record." But we note that in making this argument, the State is forced to put flesh on the bones of the court's skeletal findings. For example, the State asserts that "the court observed that [Egbert] had violated probation and continued to commit additional crimes despite already having a strong support system." The State then offers that this finding "clearly caused the court to doubt [Egbert's] ability to succeed if the court elected to impose an intermediate sanction and give [him] another chance on probation." The State's necessary clarifications of the court's findings, however, only highlight that the State was forced to make explicit what the court's decision left unstated.

Likewise, this court must infer from the district court's findings the specific reasons why public safety would be jeopardized or Egbert's welfare would not be served if the district court had imposed an intermediate sanction. While the district court referenced various factors when making its decision, it never explained why those factors caused the court to believe that an intermediate sanction would jeopardize public safety or harm Egbert's welfare. Implicit findings are not sufficient when particularized findings are statutorily required.

In sum, the district court's labelling of its decision as one involving the "public safety and welfare findings" under K.S.A. 2015 Supp. 22-3716(c)(9) does not comply with the statute's particularized-finding requirement. Instead, the district court needed to expressly set forth with particularity the reasons that the safety of the public would be jeopardized or that Egbert's own welfare would not be served if the court were to impose an intermediate sanction. Put another way, to bypass intermediate sanctions under K.S.A.

6

2015 Supp. 22-3716(c)(9), the district court must follow three steps: (1) identify the relevant factors that are specific to the defendant; (2) describe how these factors jeopardize public safety or harm the defendant's welfare; and (3) explain why these harms would not be resolved if the defendant were to serve an intermediate sanction.

The district court's statements at the dispositional hearing fell short of making these particularized findings. The court only completed the first step; it stopped after identifying various factors that could be relevant to its decision. Because the court did not comply with the particularized-finding requirement of K.S.A. 2015 Supp. 22-3716(c)(9), it abused its discretion by stepping outside the governing statutory framework.

Given this error, we must determine the appropriate remedy. Egbert asserts that courts have been aware of the need to make particularized findings in this area at least since *Clapp* was decided in 2018, but some district courts still do not comply with that requirement. He urges this court to fashion a remedy that prevents the district court from reconsidering the appropriate sanction for his probation violation and instead merely order the court to reinstate his probation. The State counters that this court should remand for a new dispositional hearing, as we have in other situations where a district court has not made particularized findings under K.S.A. 2015 Supp. 22-3716(c)(9).

We agree with the State's position. While we appreciate the frustration expressed in Egbert's brief, the remedy for failure to make the particularized findings under this statute is to remand for a new dispositional hearing. See *Clapp*, 308 Kan. at 991. We therefore reverse the district court's revocation of Egbert's probation and remand for a new dispositional hearing in compliance with K.S.A. 2015 Supp. 22-3716(c). Because Egbert did not appeal the district court's findings that he violated his probation, the court on remand should consider the appropriate disposition in light of those violations.

Reversed and remanded with directions.

7