NOT DESIGNATED FOR PUBLICATION

No. 127,768

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD E. MARSHALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed August 8, 2025. Affirmed.

Submitted by the parties for summary disposition pursuant to K.S.A. 21-6820(g) and (h).

Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.

PER CURIAM: Richard Marshall appeals the district court's decision to revoke his probation and impose his underlying prison sentence. We granted Marshall's motion for summary disposition under Supreme Court Rule 7.041A (2025 Kan. S. Ct. R. at 48). After carefully reviewing the record and the arguments in Marshall's motion, we find the district court made the particularized findings necessary to revoke his probation without first imposing an intermediate sanction. Thus, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, Marshall pleaded no contest to two counts of aggravated sexual battery for conduct that occurred in late 2020. As part of the plea agreement, the State

1

dismissed the remaining charges and recommended that Marshall be sentenced to underlying consecutive prison terms using the standard-range terms under the Kansas Sentencing Guidelines. The State also recommended that Marshall serve 36 months of probation, even though his convictions carried presumptive prison sentences.

Before sentencing, Marshall filed a motion requesting the court to depart from the presumptive sentence and place him on probation. Marshall explained that he had obtained a psychosexual evaluation from a licensed psychologist, had been admitted to a therapy program at Bert Nash Community Mental Health Center, and had begun attending therapy sessions. He also stated that he had obtained a drug and alcohol assessment, started going to treatments, and started attending Alcoholics Anonymous meetings—emphasizing that these actions were "important" because "substance abuse played a part" in his underlying convictions. Marshall argued that probation would allow him to "continue to engage in the programs that will best support reformation" while a prison sentence would "disturb" this progress.

At the sentencing hearing in January 2024, Marshall presented expert testimony from the psychologist who completed his psychosexual evaluation. The psychologist stated that he believed placing Marshall on probation would best serve the interests of the community because it would allow him to rehabilitate himself and become a productive member of society. And he opined that Marshall's current participation in treatment and therapy made it less likely that he would commit another sexual offense. The psychologist testified that he believed Marshall did not pose a danger to the community as long as he continued going to therapy and receiving targeted treatment.

The district court followed the parties' sentencing recommendations: it imposed two consecutive 32-month prison sentences, suspended these sentences, and ordered Marshall to serve 36 months of probation. The court acknowledged it was relying heavily on the parties' recommendation and the expert's testimony that both Marshall and the

community would benefit more from therapy and treatment during probation than from a prison sentence. Yet the court noted it had "grave concerns" and cautioned Marshall that—due to the seriousness of the underlying offenses—the court expected "strict compliance" with the conditions of probation. These conditions included abstaining from illegal drugs and alcohol, following the recommendations of the psychosexual and substance-abuse evaluations, continuing treatment and therapy, undergoing an updated sex-offender-risk assessment, and maintaining full-time employment.

Less than two months after sentencing, the State alleged that Marshall had violated the terms of his probation. According to the State, Marshall admitted to using illegal drugs multiple times (including within three days of sentencing), missed therapy and treatment appointments, did not report as directed within a week of starting probation, and lost his job. The State further claimed Marshall had not completed the required risk assessment and, to date, had not provided proof of scheduling it.

At a hearing on the State's motion, Marshall admitted most of these allegations. As for the rest, the court found that the State had met its burden of proof to show that Marshall had committed these violations.

The court then turned to the proper disposition. Marshall asked the court to allow him to attend an inpatient-treatment program. He argued that this course of action would address the conduct underlying the alleged violations, claiming that "[m]ost, if not all" of his behavior was caused by "substance use disorder and addiction." The court denied Marshall's request, revoked his probation, and ordered him to serve his underlying prison sentences. In doing so, the court relied on K.S.A. 22-3716(c)(7)(A), finding that the safety of the public would be jeopardized if Marshall only served a two- or three-day jail sanction.

DISCUSSION

The sole issue in this appeal is whether the district court complied with Kansas law when it revoked Marshall's probation without first imposing an intermediate sanction. Marshall contends that the district court failed to make the particularized findings required by K.S.A. 22-3716(c)(7)(A)—that imposing an intermediate sanction would jeopardize the safety of members of the public.

Once a probation violation is established, the decision to revoke probation "rests within the sound discretion of the district court." *State v. McFeeters*, 52 Kan. App. 2d 45, 47, 362 P.3d 603 (2015). The degree of discretion a district court may exercise varies based on the nature of the question before it. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). For example, while a district court has broad discretion to determine whether someone should remain on probation after they have committed a new crime, it has no discretion to disregard statutory limitations or legal standards. A district court abuses its discretion when it veers outside the statutory framework governing the consequences of probation violations. See *McFeeters*, 52 Kan. App. 2d at 47-48. Whether a district court's decision adhered to this framework is a legal question over which our review is unlimited. 52 Kan. App. 2d at 47-48.

This statutory framework has changed over time. Historically, Kansas district courts exercised broad discretion in determining the appropriate action when faced with a probation violation. *State v. Clapp*, 308 Kan. 976, 990, 425 P.3d 605 (2018). Since 2013, the Kansas Legislature has constrained district courts' discretion in probation revocations. 308 Kan. at 982. From 2013 until 2019, the legislature required district courts to impose a series of intermediate sanctions—first a 2- or 3-day jail sanction and then a 120- or 180-day jail sanction—before probation could be revoked in most cases. See, e.g., K.S.A. 2013 Supp. 22-3716(c)(1) (outlining this framework). In 2019, the legislature removed some of these limitations. See K.S.A. 2019 Supp. 22-3716(c)(7)(B) (allowing a district

4

court discretion to revoke probation without imposing other sanctions if probation was originally granted as a dispositional departure). But for the most part, courts are still required to impose an intermediate sanction of two or three days in jail before probation may be revoked outright. See K.S.A. 22-3716(c)(1)(B) and (C).

We note that because Marshall was placed on probation as a result of a departure from the presumptive prison sentence for his convictions, Kansas law did not require the district court to impose an intermediate sanction before revoking that probation and imposing the underlying sentence. See K.S.A. 2020 Supp. 22-3716(c)(7)(B). Here, however, the district court did not rely on that provision as a basis for its decision.

Instead, the district court relied on K.S.A. 22-3716(c)(7)(A) to bypass intermediate sanctions and impose Marshall's underlying prison sentences. This subsection allows a court to revoke probation "without having previously imposed a sanction" if the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized . . . by [an intermediate] sanction." K.S.A. 22-3716(c)(7)(A). Because the court rendered its decision under that provision, we too limit our consideration to whether the court's findings are sufficient to support that disposition.

Findings are sufficiently particularized when they are "'distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018). A district court's particularized findings must explicitly state why the public's safety would be jeopardized *by imposing the intermediate sanction*—not by probation generally. See *State v. Duran*, 56 Kan. App. 2d 1268, 1274-76, 445 P.3d 761 (2019), *rev. denied* 312 Kan. 895 (2020). Put another way, to bypass intermediate sanctions under K.S.A. 22-3716(c)(7)(A), the district court must identify the relevant factors that are specific to the defendant, describe how these factors jeopardize public safety, and explain why these harms would not be resolved if the defendant were to serve an intermediate sanction.

After reviewing the record, we are convinced that the district court made sufficiently particularized findings to justify bypassing intermediate sanctions under K.S.A. 22-3716(c)(7)(A) in this case. The district court first identified factors specific to Marshall and explained how those factors jeopardized public safety. It noted his Level 4A score on the original psychosexual evaluation—reflecting a risk of recidivism twice that of the average individual convicted of a sexually motivated offense. The court observed that Marshall's drug use was "tied into" the commission of his underlying offenses. It then emphasized that Marshall had "disregarded" multiple court orders—he had continued to use drugs and had failed to complete the updated risk assessment, attend treatment and therapy, and report to his probation officer—all measures the court made clear were necessary to "alleviate [its] concerns" about the threat Marshall posed to the public's safety. Finally, relying on the psychologist's expert testimony, the court found that Marshall's noncompliance signaled a higher risk that he would reoffend.

The court then found that a brief jail sanction would not decrease the likelihood of future harm because Marshall had "no intent to get any help for [these] underlying issues." In the court's view, even if an intermediate sanction were imposed, Marshall would likely continue to delay treatment, persist in his drug use, and remain at risk of reoffending. The court expressly found that "any sanction" short of revocation would not make "any difference."

These findings satisfy the particularity requirement set by K.S.A. 22-3716(c)(7)(A). Thus, we find the district court did not abuse its discretion in revoking Marshall's probation and imposing his underlying prison sentences without first ordering an intermediate sanction.

Affirmed.